1  LAW OFFICES OF BRIAN SILBER, P.A.
   Brian Silber (Pro Hac Vice Application Pending)
2  916 South Andrews Avenue
   Fort Lauderdale, FL 33316
3  Telephone: (954) 462-3636
   Email: silberlaw@gmail.com
4

5  THE LENTZ LAW FIRM, P.C.
   Jacek W. Lentz (State Bar No. 213198)
6  9171 Wilshire Blvd., Suite 500
   Beverly Hills, CA 90210
7  Telephone: (213) 250 - 9200
   Facsimile: (888) 571 – 5591
8  Email: jwl@lentzlawfirm.com

9  Attorneys for Movant
   Tenant-4
10

11

12                    UNITED STATES DISTRICT COURT

13                    CENTRAL DISTRICT OF CALIFORNIA

14

15  UNITED STATES OF AMERICA,          Case No. 21-CR-00106-MCS

16                      Plaintiff,     **NOTICE OF MOTION AND
                                       MOTION BY TENANT-4 FOR
16                                     RETURN OF PROPERTY**

17      v.                             [Rule 41(g) Fed. Rules Crim. Proc.]

18

19  U.S. PRIVATE VAULTS INC.,          Date: ~~TBD~~ *June 7, 2021*
    California Corporate Number C3405297,   Time: ~~TBD~~
20                                     Department: *3:00 p.m*
                        Defendant.
21                                     Hon. Mark C. Scarsi

22

23  TO THE HONORABLE COURT AND THE OFFICE OF THE UNITED STATES

24  ATTORNEY FOR THE CENTRAL DISTRICT OF CALIFORNIA:

25         PLEASE TAKE NOTICE that on the date and time indicated above, or as soon

26  as the matter may be heard, Movant TENANT-4 ("Tenant-4") will, and hereby does,

27  respectfully move this Court through the undersigned counsel for an order for return of

28

her/his property, to wit, contents of safe deposit box No. 34 (the "Subject Property")
seized on or about March 22, 2021, from a facility known as U.S. PRIVATE
VAULTS, INC. ("USPV") in Beverly Hills, California, on or about March 22, 2021 to
March 26, 2021.

     This motion will be made pursuant to Rule 41(g) of the Federal Rules of
Criminal Procedure and the 4TH, 5TH, and 14TH Amendments to the United States
Constitution, other authority named below, and the equitable jurisdiction of the Court.

     This motion will be based on this notice, the memorandum of points and
authorities that will be submitted prior to the hearing, the complete files and records of
this action, and the argument of counsel and evidence presented at the time of the
hearing of this motion.

     **Please note that the instant motion is nearly identical to the Motions For
Return of Property filed on behalf of movants Tenant-1, Tenant-2 and Tenant-3
filed contemporaneously herewith.  The only difference is in the name of the
movant and the contents of the declarations and the exhibits thereto.**

DATED: April 27, 2021

                        Respectfully submitted,

                        LAW OFFICES OF BRIAN SILBER

                        By: _____

                        Brian Silber
                        Attorneys for Movant
                        Tenant-4
                        (Pro Hac Vice Application Pending)

1

2  DATED:      April 27, 2021                    Respectfully submitted,

3                                               THE LENTZ LAW FIRM, P.C.

4

5

6                                               By: _____
                                                     Jacek W. Lentz
7                                                    Attorneys for Movant
                                                     Tenant-4
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>TABLE OF CONTENTS</u>

MOTION TO RETURN PROPERTY PURSUANT TO RULE 41(g), FRCrP ............. 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 4

I.     Introduction ........................................................................... 4

II.    Issues Presented ..................................................................... 4

III.   Jurisdiction ............................................................................ 5

       a.  Legal Standard for Conferring Discretionary Jurisdiction in a Rule 41(g)
           Motion ............................................................................... 5

       b.  Basis for Granting the Court's Jurisdiction Herein ................... 6

IV.    Movant's Basis for Appearing Under a Pseudonym .............................. 7

V.     Relevant Facts ....................................................................... 8

       a.  U.S. Private Vaults is no different than a coin operated locker ................... 8

       b.  Inventory Search Resulting in Seizure of the Subject Property ................... 10

VI.    Standing ............................................................................... 12

VII.   Due Process Violations ............................................................ 13

VIII.  Lack of Probable Cause ........................................................... 15

       a.  Canine Evidence Not Relevant to Probable Cause Analysis in this Case ... 16

IX.    Requested Relief .................................................................... 17

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Doe v. Penzato,*
    (N.D.Cal. May 13, 2011, No. CV10-5154 MEJ) 2011 U.S. Dist.LEXIS 51681, at *5......7

*Does I thru XXIII v. Advanced Textile,*
    214 F.3d 1058, 1068 (9th Cir. 2000) .................................................................7

*Elrod v. Burns,*
    427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)................................5

*Florida v. Harris,*
    568 U.S. 237, 247-248 (2013) ...............................................................17, 22

*Grannis v. Ordean,*
    234 U.S. 385 (1914) ...............................................................................14

*Melendres v. Arpaio,*
    695 F.3d 990, 1002 (9th Cir. 2012) ...........................................................5

*Melrose East Subdivision,*
    357 F.3d 493, 504 (5th Cir. 2004) ............................................................16

*Milliken v. Meyer,*
    311 U.S. 457 (1940) .............................................................................14

*Mullane v. Cent. Hanover Bank & Trust Co.,*
    339 U.S. 306, 314 (1950) ......................................................................14

*Planned Parenthood Ariz., Inc. v. Humble,*
    753 F.3d 905, 911 (9th Cir. 2014) ..............................................................5

*Priest v. Las Vegas,*
    232 U.S. 604 (1914) ..............................................................................14

*Ramsden v. United States,*
    2 F.3d 322, 324 (9th Cir. 1993) .................................................................4

*Roller v. Holly,*
    176 U.S. 398 (1900) ..............................................................................14

*United States v. Doe,*
    655 F.2d 920, 922 n. 1 (9th Cir. 1981) .........................................................7

*U.S. v. Kama,*
    394 F.3d 1236, 1237-1238 (9th Cir. 2005)........................................................4

*U.S. v. Medrano,*
    5 F.3d 1214, 1218 (9th Cir. 1993) ..............................................................12

*U.S. v. Piwowar,*
    492 F.3d 953 (8th Cir. 2007) ......................................................................12

**Statutes & Other Authorities:**

4th, 5th, and 14th Amendments to the United States Constitution................................2

Rule 41(g) ........................................................................................*passim*

FRCrP ...........................................................................................*passim*

# LIST OF EXHIBITS

A    -    Movant's Declaration

B    -    Los Angeles Times Articles

C    -    U.S. Private Vaults Company Information

D    -    Sample Coin Operated Lockers

E    -    FBI Notice and Webpage

F    -    FBI Form Email

G    -    Private Investigator Report

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.
## INTRODUCTION

1.      Tenant-4 is a person who rented a safety deposit box from USPV. (Declaration of Tenant-4, Exhibit A ("Decl. of Tenant-4"). The Subject Property represents the contents of Tenant-4's box and was seized by federal law enforcement pursuant to an inventory search following a police raid at USPV. ("Decl. of Tenant-4," Exhibit A); Los Angeles Times Article, attached as Exhibit B ("LAT Articles"). The instant motion seeks return of the Subject Property.

## II.
## ISSUES PRESENTED

2.      To make the case for relief, this motion presents the following issues for the Court's consideration: First, the Court is respectfully requested to grant its discretionary equitable jurisdiction to rule on the merits of this motion.

3.      Second, the Court is asked to determine if Tenant-4 has standing to seek relief herein. Third, if the Court finds that Tenant-4 has standing, it is then asked to conduct an inquiry to determine if there is probable cause to justify the continued deprivation of the Subject Property. Fourth, the Court is asked to determine if the Government has deprived Tenant-4 of the Subject Property without due process of law. Fifth, should the Court find that there is no probable cause or that there is a violation of due process, or both, it is asked to order the Government to promptly return the Subject Property through the undersigned counsel forthwith.

4.      In a separate motion filed contemporaneously with the instant one, Tenant-4 also seeks this Court's permission to proceed anonymously.

# III.

# JURISDICTION

**A.    Legal Standard For Conferring Discretionary Jurisdiction in a Rule 41(g) Motion.**

5.    This motion is brought under *Rule 41(g), FRCrP,* and seeks the return of the Subject Property. The Subject Property named in this motion is the same Subject Property named in Tenant-4's declaration. ("Decl. of Tenant-4," Exhibit A).

6.    Pursuant to *Rule 41(g),* "A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return."

7.    While *Rule 41(g)* is typically used to obtain the return of property after an indictment has been issued, "district courts have the power to entertain motions to return property seized by the government when there are no criminal proceedings pending against the movant." *U.S. v. Kama*, 394 F.3d 1236, 1237-1238 (9TH Cir. 2005), (quoting *Ramsden v. United States*, 2 F.3d 322, 324, (9th Cir. 1993)).

8.    Because such motions seek equitable relief, they are controlled by the *Federal Rules of Civil Procedure* and the Courts must exercise "restraint and caution" before assuming jurisdiction. *Id.* To determine if the Court should assume jurisdiction, it must consider the following:

I.    Has the Government displayed a callous disregard for Tenant-4's Constitutional rights?

II.    Does Tenant-4 have an individual interest and need for the Subject Property?

III.    Would Tenant-4 be irreparably injured by denying return of the Subject Property?

IV.    Does Tenant-4 have another adequate remedy at law?

*Kama* at 1237-1238.

12.    If the "balance of equities <u>tilts in favor</u> of reaching the merits" of the *Rule 41(g)* motion, the district court <u>should</u> exercise its equitable jurisdiction to entertain the motion. *Id.*

## B.    Basis For Granting Court's Jurisdiction Herein.

13.    Tenant-4 has a possessory interest in and need for the Subject Property. (Decl. of Tenant-4, Exhibit A).  The search and seizure that is at issue in this motion is the same search and seizure that is before this Court in the instant case. As such, this Court *already has jurisdiction* over this seizure.  (LAT Articles, Exhibit B).

14.    Tenant-4 has no other recourse but to seek relief herein because no forfeiture action is pending against the Subject Property, Tenant-4 has not been indicted, and the claim process offered by the Government violates due process.

15.    As Tenant-4 sits in limbo, they actively suffer daily doses of irreparable harm as the government callously deprives her/him of the Subject Property without probable cause and without due process in violation of *the 4th, 5th, and 14th Amendments to the United States Constitution.*  **"The deprivation of constitutional rights 'unquestionably constitutes irreparable injury."**  *Planned Parenthood Ariz., Inc. v. Humble*, 753 F.3d 905, 911( 9th Cir. 2014) (citing *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012), (quoting *Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976)) (emphasis added).

16.    Any recourse for Tenant-4's deprivation must necessarily cure two harms: First, it must offer a pathway to obtain the ultimate return of the Subject Property. Second, it must minimize the extent of the irreparable harm by minimizing the <u>duration</u> of the deprivation.

17.    Tenant-4 is suffering irreparable harm <u>every single day</u> he/she is deprived of the Subject Property. But for the instant motion, no other recourse exists that offers

a faster and more judicially economical pathway to relief. No other recourse will minimize the ultimate harm better, i.e. the number of days Tenant-4 must be deprived of the Subject Property, than *Rule 41(g)* relief sought before this particular Court in this particular case.

18.    *Rule 41(g)* relief is litigated with a <u>single motion</u> as opposed to an entire cause of action that will take months and possibly years to resolve. Therefore, Tenant-4 has no other recourse that both presents a pathway to return of the Subject Property while also minimizing the duration, and therefore the extent, of the irreparable harm the ongoing deprivation is actively causing.

19.    *Rule 41(g)* gives the Court authority to use its discretionary equitable powers to cure an adverse collateral consequence suffered by third parties as a result of the government's police action in this case. No better venue or recourse exists to cure the unconstitutional deprivation and illegal search and seizure of the Subject Property.

# IV.

## BASIS FOR APPEARING UNDER A PSEUDONYM

20.    The Ninth Circuit permits the use of pseudonyms in unusual cases where concealing a party's identity is necessary to protect that party from "harassment, injury, ridicule, or personal embarrassment." *Doe v. Penzato*, (N.D.Cal. May 13, 2011, No. CV10-5154 MEJ, 2011 U.S.Dist.LEXIS 51681, at *5), *United States v. Doe*, 655 F.2d 920, 922 n. 1 (9th Cir. 1981); *Does I thru XXIII v. Advanced Textile*, 214 F.3d 1058, 1068 (9th Cir. 2000).

21.    Tenant-4 appears using a pseudonym because this is an unusual case where concealing her/his identity is necessary to protect Tenant-4 from harassment, injury, ridicule, and personal embarrassment. *Id.* A separate motion for leave to

proceed anonymously is filed contemporaneously with the instant motion and is incorporated herein by reference.  See Motion for Leave to Proceed Anonymously by Tenant-4, filed contemporaneous herewith.

## V.

## **RELEVANT FACTS**

### A.    U.S. Private Vaults Is No Different Than a Coin Operated Locker.

22.    USPV is located in Beverly Hills, California and has been in business since 2014. It is a member of the *Beverly Hills Chamber of Commerce* and advertises itself as a private vault company that rents safety deposit boxes to the general public. (USPV Company Information, attached as Exhibit C).  To attract customers, USPV advertised itself as an ultra-secure, high-tech company that uses a 50-ton steel vault, motion detectors, heat sensors, biometric scanners, and 24/7 live video surveillance by ADT to secure its client's property. *Id.* However, USPV is not a bank, it is not a financial institution, and it is not FDIC insured. On the contrary, it is nothing more than a public storage business that rents very small, very secure storage units.

23.    To access the contents of one's box, a customer had to first pass a biometric scanner to gain access to a common area where the boxes were stored. However, the biometric scanner did not give access to the contents of any box. On the contrary, the only way to access the contents of a box was with a customer key.

24.    When renting a new box, USPV provided the tenant with **two keys** for each box rented just like a hotel may give two key cards to a guest. These keys were identical but could only open the one box they corresponded to. Equally, each USPV box could only be opened by the two keys that were issued to the tenant.

25.    At a typical bank, a safety deposit box can only be accessed with two keys. First, the bank uses its key to unlock the locking mechanism. Then, the customer

uses her/his key to unlock the box. This is <u>not</u> how it worked at USPV. On the contrary, at USPV the "bank lock" was disabled. Instead, to access a USPV box a customer only needed one of the two keys that USPV gave her/him upon renting their box. <u>Thus, the only way to access a USPV box was with a unique customer key.</u> As an added security feature, each key was unmarked and did not have any box number on it.

26.    USPV played up its privacy security in its marketing. When renting a box or boxes to a new customer, it did not ask for any name, address, phone number, email, identification, or any other personal information. <u>As a result, there is no account holder information that corresponds to any one box.</u>

27.    This practice did not violate any federal, state, or local laws and was therefore legal. In fact, it is an accepted and well-stablished business practice used across a multitude of industries, including gyms, bowling alleys, ice-skating rinks, and amusement parks that rent coin operated lockers to anonymous customers. (Sample Coin Operated Lockers, Exhibit D).

28.    When using a coin operated locker, a customer puts a quarter in the slot, the door opens, she/he places their items in the box, closes the door, and then secures it by taking the key. No name, address, phone number, email, or identification is asked for or required by any law.

29.    The undersigned's investigation into this case revealed that some customers went to USPV when safety deposit boxes were unavailable at their banks during 2020. Other customers went to USPV because it offered up to $500,000 in insurance coverage – which is *twice* the amount offered by FDIC. In yet other cases, customers went to USPV simply because it was the first result on a Google search for "safety deposit boxes near me."

**B.     Inventory Search Resulting In Seizure of the Subject Property.**

30.     According to the indictment in this case (Doc. Dkt No. 1), USPV allegedly used its nest of safety deposit boxes to facilitate drug trafficking, money laundering, and other offenses.

31.     However, this was due to no fault of Tenant-4 or the Subject Property. Tenant-4 had no knowledge of these alleged activities, has nothing to do with them, and denies any and all wrongdoing. Like tenants at a public storage facility, Tenant-4 had no way of knowing what her/his neighbors were up to behind the locked doors of their respective units.

32.     To Tenant-4's best knowledge, federal law enforcement seized the Subject Property pursuant to an <u>inventory search</u> when they executed a warrant against USPV's property between March 22 and March 26, 2021.

33.     To Tenant-4's best knowledge, the Subject Property was not seized pursuant to any probable cause-based search. There never was, nor is there presently, any probable cause to justify any search and seizure or deprivation of the Subject Property.  Specifically, there is no probable cause for forfeiture of the Subject Property under any federal forfeiture statute.

34.     Upon completing the execution of their warrant, federal law enforcement taped a <u>single sheet of printer paper</u> to USPV's front door to advise potential claimants of a webpage where a claim may be filed. (FBI Notice and Webpage, attached as Exhibit E).  However, the webpage offered no helpful information. It is comprised of nothing more than a web form that asks for name, address, phone number, and email – *the very things USPV customers kept private.*  **Tenant-4 had a reasonable expectation privacy, not merely in the Subject Property but, as importantly, with regard to his/her private information as well.**

35.    It does not provide any material information that would comport with due process or that is actually useful to someone desperately looking for information about what happened with their property, why it was taken, or how to get it back.

36.    When the undersigned contacted the Los Angeles Field Office of the FBI for information, his call was shuffled around until the line disconnected. Equally, calls and emails to the FBI by aggrieved USPV tenants have been ignored. Notices of representation and requests for information sent to the FBI by private attorneys have been completely ignored – *not even a phone call.*

37.    After two weeks of complete silence, the FBI finally sent an email to claimants who submitted their email addresses online. However, it was a form email that generally advised "Currently, all property **seized** is in a secure FBI facility." It further advised that the FBI would be in touch in a month, maybe two, and will *then* make arrangements for return of property or to request "additional information." (FBI Form Email, Exhibit F).

38.    The email does not specify what "additional information" entails. It is equally silent about the claim process and offers no instructions, rules, or other insight. It also discouraged claimants from filing more than one claim or calling the FBI with inquiries, as such efforts "will only slow the process".

39.    No instructions were given to people who were unsure if their claim was received or who were unsure about how to claim multiple boxes. The FBI has offered no assistance for claimants who have questions or who need help making a claim, such as the elderly, disabled, infirm, or those who cannot read, write, or speak English.

40.    Additionally, the form email was only sent to people who had previously provided their email address on the FBI's web form. As such, it was not reasonably calculated to apprise any other aggrieved party.

41.    On April 25, 2021, a licensed private investigator retained by the undersigned diligently searched for public notices relating to the USPV seizure.

Despite finding dozens of press releases about other cases, no notice or information about the USPV seizure was found. (Private Investigator Report, Exhibit G). Tenant-4 has never seen or received a copy of any warrant or any notice regarding the seizure of the Subject Property despite her/his own diligent search. So far, the best source of information for aggrieved parties has been the L.A. Times. (LAT Articles, Exhibit B).

## VI.

## STANDING

42.     Tenant-4 can prove a possessory interest in the Subject Property by accurately providing her/his box number(s) in conjunction with a description of its contents (the Subject Property), the size of the box(es), and their location within the vault. (Decl. of Tenant-4, Exhibit A).

43.     Separately, Tenant-4 can prove standing by presenting the two keys that open her/his box(es). *Id.* Tenant-4 possesses **both keys** and wishes to provide them through counsel for this purpose.

44.     Having keys to a place where an object is located gives one "dominion and control" over the object. (*U.S. v. Medrano*, 5 F.3d 1214, 1218 (9th Cir. 1993), see also *U.S. v. Piwowar*, 492 F.3d 953 (8th Cir. 2007) ("Constructive possession of a firearm is established if the possessor had control over the place where the firearm was located, or control, ownership, or dominion over the firearm itself.")

45.     Because USPV never collected customer information, unlike in a situation involving a bank account standing cannot be determined by evaluating evidence of identity. Identity is irrelevant to assessing standing here because it is inconclusive due to the lack of customer records at USPV. In the anonymous customer setting presented by USPV, standing is established by an exhibition of accurate personal knowledge

concerning the number, location, and contents of each claimed box or by presenting both corresponding keys. Tenant-4 can do both.

## VII.

## <u>DUE PROCESS VIOLATIONS</u>

46.     The Subject Property was seized pursuant to an inventory search and not due to a probable cause-based search. As such, there is no basis for continued detention pending the outcome of any investigation.

47.     Despite this difference, the government persists in its deprivation without affording aggrieved parties, including Tenant-4, any due process of law.

48.     When armed government agents executed their warrant at USPV, their actions served to forcefully evict 600-1000 people from their lawfully rented spaces without due process. The magnitude of this deprivation is large - both in terms of the number of people affected and the value of the property being deprived (tens of millions of dollars, if not more). The effects of this deprivation are also exacerbated due to the economic impact of the Coronavirus. Not to mention, the duration of this deprivation is unconstitutionally long.

49.     The government owes Tenant-4 the right to be informed, to receive valid notice, to know under what authority the Subject Property has been seized, and under what authority it continues to be seized. It also owes Tenant-4 the opportunity to make a meaningful claim that is governed by rules that guarantee fair adjudication, the right to be heard and lodge objections, and to seek review of adverse decisions.

50.     "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank &*

*Trust Co.,* 339 U.S. 306, 314 (1950), citing *Milliken v. Meyer*, 311 U.S. 457 (1940), *Grannis v. Ordean*, 234 U.S. 385 (1914), *Priest v. Las Vegas*, 232 U.S. 604 (1914), and *Roller v. Holly*, 176 U.S. 398 (1900).

51. Presently, Tenant-4 and every single aggrieved person are completely in the dark. Nobody knows what is really happening with their property or when, how, and under what conditions it will be returned, including Tenant-4.

52. This is due to one fact: The government is callously ignoring the 600-1000 people it forcefully evicted from USPV and from whom it seized tens of millions of dollars in property, including Tenant-4.

53. While the government may not be in a position to send individual notices to people whose identities and addresses it is unaware of, it has failed to take any reasonable steps to apprise aggrieved parties using public means, such as press releases, the media, or other public notices.

54. Posting a single sheet of paper on a door and a publishing a single page webform buried deep within the FBI's website raised more questions than it answered:

- Why is property still being detained?
- Why isn't the Government communicating?
- What legal authority is the FBI's claim process based on?
- How will the FBI adjudicate claims?
- Will there be an opportunity to be heard or object?
- Will there be a review process for denied claims?
- How long will the process take?
- How will disputes be adjudicated?
- Have special accommodations been made for the elderly, the disabled, or those who do not or cannot read, write, or speak English?
- Who will make the decision to grant or deny a claim? Is that person a lawyer, a hearing officer, or a special agent? Were they trained for this purpose?

- What criteria will FBI decision makers follow when making a ruling on a claim?

- What exactly did the FBI mean when it referenced "additional information" in its email?

55. If there are no rules, then the system is arbitrary and claims will be decided on the individual inclinations of whichever FBI employee gets any one claim. This will result in arbitrary and disparate outcomes that cannot be relied upon and which do not comport with the Constitution's requirements for due process.

56. Aggrieved parties, including Tenant-4, are stuck because the government has their property locked up in a secure facility without any recourse. Instead, the FBI is telling people to leave them alone and stop making inquiries or else the process will take longer.

57. The government's conduct is **callous** because it exhibits a complete indifference and disregard for how its actions are affecting the property rights and lives of the people who had valuables secured at USPV, including Tenant-4.

## VIII.

## LACK OF PROBABLE CAUSE

58. To justify the continued seizure and deprivation of the Subject Property, there must be probable cause. *Melrose East Subdivision*, 357 F.3d 493, 504 (5th Cir. 2004) Also, probable cause must be specific to the person or the object. It cannot be generalized.

59. However, in this case, there is no probable cause. There never has been nor is there presently. On the contrary, the seminal event in this case was an *inventory search* that ended on or before March 26, 2021 – not a probable cause search. Either

there is probable cause to justify continued deprivation of the Subject Property from Tenant-4 or there is not. If there is not, the property must be promptly returned.

## A.   Canine Evidence Not Relevant to Probable Cause Analysis In This Case.

60.   According to the L.A. Times, a police canine was used to search USPV when executing the warrant.  (LAT Articles, Exhibit B).  Should the government rely on a canine olfactory alert in support of probable cause, Tenant-4 would request a hearing to challenge such evidence because the presence of a large quantity of narcotics at USPV, which was stored by other unknown third parties, would provide an innocent explanation for why the Subject Property might smell of narcotics despite not being involved in any illegal drug related activity.

61.   In *Florida v. Harris*, 568 U.S. 237, 247-248 (2013), the United States Supreme Court stated:

> In short, a probable-cause hearing focusing on a dog's alert should proceed much like any other. The court should allow the parties to make their best case, consistent with the usual rules of criminal procedure. And the court should then evaluate the proffered evidence to decide <u>what all the circumstances demonstrate</u>. If the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause. If, in contrast, the defendant has challenged the State's case (by disputing the reliability of the dog overall or of a particular alert), then the court should weigh the competing evidence. In all events, the court should not prescribe, as the Florida Supreme Court did, an inflexible set of evidentiary requirements. <u>The question--similar to every inquiry into probable cause--is whether all the facts surrounding a dog's alert, viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal</u>

<u>contraband or evidence of a crime</u>. A sniff is up to snuff when it meets that test.

62.    For a canine alert to be relevant, the canine in question must be reliable. To establish reliability, the government must produce evidence "from controlled settings that a dog performs reliably in detecting drugs." *Id.* Canines are used by police to develop probable cause on the theory that an object could only smell of drugs if it was recently in close proximity to a large quantity of drugs for an extended period of time. However, that theory is inapplicable to this case because the Subject Property was stored in the same closed room where other unknown third parties stored large quantities of narcotics for long periods of time <u>due to no fault or knowledge of Tenant-4</u>.

63.    A positive canine alert is just an indication that the dog smelled a specific odor it was trained to detect. The dog's alert does not indicate **why** the dog smells what it smells. To have meaning, a canine alert must be viewed in light of all the circumstances, such as an innocent explanation for why an object may smell of narcotic odor.

## IX.
## <u>REQUESTED RELIEF</u>

64.    Tenant-4 respectfully appears before this Court to obtain return of the Subject Property and nothing more. In essence, the Court is asked to answer four ultimate questions in a manner that protects Tenant-4 from the irreparable harm that she/he will incur by having her/his identity, name, or other personal information exposed: *Should the Court accept jurisdiction? Does Tenant-4 have standing? Is there a probable cause violation? Is there a due process violation?*

65.    To answer these three questions, the Court is asked to begin its inquiry by conducting an *in camera* review to determine standing, pursuant to *L.R. 79-6 Confidential Court Records – In Camera Review*. The purpose of conducting this review in camera is to protect Tenant-4's privacy and the integrity of Tenant-4's description of her/his box number(s), box location(s), box size(s), and box contents. If disclosed publicly, Tenant-4 would lose the ability to use this information to prove her/his possessory interest in the Subject Property.

66.    To make a decision on standing, the Court is asked to order Tenant-4's counsel to provide the Court with an unredacted version of Tenant-4's sworn Declaration, Exhibit A, for the Court's *in camera* inspection, which contains her/his descriptions.

67.    The Court is then asked to contemporaneously order the government to submit its evidence, in affidavit form, concerning Tenant-4's box size(s), location(s) in the vault, and the contents of each claimed box. Such evidence may include inventory reports, image scans, photographs, or videos by crime scene investigators. The Court is asked to receive these items *in camera* and compare them to Tenant-4's descriptions contained in his/her Declaration, Exhibit A.

68.    Should the government wish to inspect an unredacted copy of Tenant-1's Declaration, Exhibit A, so it may fairly review and challenge Tenant-4's claim of standing, the Court could use its equitable powers to balance that interest against Tenant-4's need for privacy by ordering the parties to appear for an *in camera* hearing wherein each side is ordered to disclose its evidence regarding standing to the other through counsel. However, the Court should balance the Government's interest by making disclosure reciprocal and not one sided.

69.    By using *in camera* proceedings, the Court can conclusively assess the standing while still giving the government its fair chance to challenge standing in a

1    manner that does not compromise Tenant-4's privacy or the confidential nature of

2    Tenant-4's Declaration.

3        70.    If the Court finds that Tenant-4 has provided a reasonably accurate

4    description as stated above, it should find that standing has been established as it

5    would be virtually impossible for someone to guess that information. Having such

6    special knowledge evidences Tenant-4's possessory interest. Since Tenant-4 has a

7    valid possessory interest, she/he also has standing.

8        71.    If the Court does not yet find standing after reviewing Tenant-4's

9    description, it can then order the government to determine if Tenant-4's keys unlock

10    the box(es) she/he is claiming. Either the government could record this test on video

11    and provide it to the Court in affidavit form or it could perform the test in a hearing

12    before this Court that Tenant-4's counsel may also attend. If Tenant-4's keys unlock

13    her/his claimed box(es), the Court should then find that standing is established. It

14    should be emphasized that the proposed *in camera* review is limited to the Court's

15    assessment of standing and nothing else.

16        72.    If the Court finds that Tenant-4 has standing, it is then asked to conduct a

17    probable cause inquiry and to assess Tenant-4's due process claims. Because the

18    burden shifts back to the government in a probable cause inquiry, the Court is asked to

19    order the government to produce its evidence, under oath, of probable cause regarding

20    the Subject Property. The Court is also asked to conduct an evidentiary hearing so that

21    it may receive evidence to rule on this motion, including to answer questions

22    concerning the admissibility and weight of any canine olfactory evidence. *Rule 41(g),*

23    *FRCrP, Florida v. Harris*, 568 U.S. 237, 247-248 (2013).

24        73.    Finally, upon finding that there is no probable cause or finding that there

25    is a due process violation, or both, the Court is asked to order the government to

26    promptly return the Subject Property through the undersigned counsel forthwith.

27

28

WHEREFORE, Tenant-4 and the undersigned attorneys respectfully motion this Court for the relief requested above and to order the United States of America to promptly return the Subject Property through the undersigned counsel forthwith.


DATED: April 27, 2021                    Respectfully submitted,

                                         LAW OFFICES OF BRIAN SILBER


                                         By: _____
                                             Brian Silber
                                             Attorneys for Movant
                                             Tenant-4
                                             (Pro Hac Vice Application)


DATED: April 27, 2021                    Respectfully submitted,

                                         THE LENTZ LAW FIRM, P.C


                                         By: _____
                                             Jacek W. Lentz
                                             Attorneys for Movant
                                             Tenant-4

... 

# **PROOF OF SERVICE**

I, Malgorzata A. Graves, declare as follows:

I am over the age of eighteen years, and not a party to the within case; my business address is The Lentz Law Firm, P.C., 9171 Wilshire Blvd, Suite 500, Beverly Hills, California 90210.  On April 28, 2021, I served the within:

## **MOTION OF RETURN OF PROPERTY by TENANT-4**

in the United States District Court, Central District of California, Court Case No. 21-CR-00106-MCS, by sending a true copy thereof, as indicated and addressed as follows:

> Mr. Andrew Brown
> Assistant US Attorney
> Office of US Attorney
> Major Frauds Section
> 312 North Spring Street
> 11th Floor
> Los Angeles, CA 90012-4700
> **[Fax: ]**

☒ **(BY MAIL)** By placing such document in an envelope, with postage thereon fully prepaid for First Class Mail, for collection and mailing at 79 Forest Lake Dr., Asheville, NC 28803.  I am readily familiar with the process of collection and processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for collection.

☐ **(BY PERSONAL SERVICE)** By causing such document to be delivered by hand with instructions that it be personally served.

☐ **(BY FACSIMILE)** By placing such document for collection and transmission at the office of The Lentz Law Firm, P.C., Los Angeles, California, to the facsimile numbers listed above.  I am readily familiar with the practice of The Lentz Law Firm, P.C., for collection and processing of facsimiles, said practice being that in the ordinary course of business, facsimiles are transmitted immediately after being placed for processing.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct and that this declaration was executed on April 28, 2021, at Asheville, North Carolina.

_____
Malgorzata A. Graves

THE LENTZ LAW FIRM, P.C.
9171 WILSHIRE BLVD, SUITE 500, BEVERLY HILLS, CA 90210
Telephone: 213/250-9200  Facsimile: 888/571-5591

**REDACTED VERSION OF DOCUMENT**
**PROPOSED TO BE FILED UNDER SEAL**

**DECLARATION UNDER PENALTY OF PERJURY**

**TENANT-4**

1.      I am the person identified as TENANT-4 in *Tenant-4's Motion for Return of Property* (the "Motion") filed in case number 21-CR-00106-MCS, in the U.S. District Court for the U.S District Court for the Central District of California, by our attorneys Brian Silber and Jacek Lentz. I submit this declaration in support of the Motion which is incorporated herein by reference.

2.      The "Subject Property" referred to in the Motion is the same Subject Property claimed in this Declaration and which is described in Exhibit 2 to this Declaration, below.

3.      ████████████████████████████████ box number 34 ("Box 34") located at 9182 West Olympic Blvd., Beverly Hills, California, 90212. ████████ ████

4.      I claim the contents of Box 34 (the Subject Property), which are listed in Exhibit 2 to this Declaration, that were seized by federal law enforcement from Box 34 between March 22, 2021 and March 26, 2021, in Beverly Hills, California.

5.      ████████████████████████████████████
████████████████████████████████

6.      ████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████

-1-

7. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████

8. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████

9. ████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████

10. ███████████████████████████████████████████
████████████████████████████████

11. ███████████████████████████████████████████
████████████████████████████████████████████

12. ███████████████████████████████████████████
██████████████████████████████████████

13.    I hereby authorize law enforcement, including the FBI, to release the
Subject Property, as listed in Exhibit 1 to this declaration, to my attorneys Brian Silber
and/or Jacek Lentz.

## OATH PURSUANT TO 28 U.S.C. §1746

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 26TH day of April, 2021, at Beverly Hills, California.

███████████████████████

**Tenant-4**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 1

# DECLARATION TENANT-4



# EXHIBIT 2

# DECLARATION TENANT-4

















# EXHIBIT 3

# DECLARATION TENANT-4

# EXHIBIT 4

# DECLARATION TENANT-4

# EXHIBIT 5

# DECLARATION TENANT-4

B

CALIFORNIA

# Beverly Hills store let criminals stash guns, drugs and cash in vault at strip mall, prosecutors say



Federal agents have seized evidence from U.S. Private Vaults, a Beverly Hills business that has been charged with three counts of conspiracy. (Irfan Khan / Los Angeles Times)

By MICHAEL FINNEGAN  |  STAFF WRITER

APRIL 2, 2021 6:36 PM PT



When federal agents descended on a Beverly Hills strip mall last month, it took them five days to seize the contents of hundreds of safe deposit boxes inside a store called U.S. Private Vaults.

On Friday, the government revealed why it was so interested in the seemingly mundane business wedged between a nail salon and a spa: It was laundering money for drug dealers and letting them stash guns, fentanyl and stacks of $100 bills in security boxes that were rented anonymously, prosecutors alleged.

4/28/2021                        Be       Hills store let criminals store drugs and cash, prosecuto       ? - Los Angeles Times

In an indictment against U.S. Private Vaults, Inc., the U.S. attorney for Los Angeles accused the company of marketing itself deliberately to attract criminals, saying it brazenly promoted itself as a place customers could store valuables with confidence that tax authorities would be hard-pressed to learn their identities or what was stored in their locked boxes. To access the facility, customers needed no identification; it took just an eye and hand scan to unlock the door.

"We don't even want to know your name," it advertised, according to prosecutors.

ADVERTISEMENT

Prosecutors also allege that an owner and employees of the company were involved in drug sales that took place at the business and helped customers convert cash into gold in amounts that would avoid suspicion.

Even before charges were announced, the case set off a court fight over the legality of the government's seizure of the contents of every safe deposit box in the store. Earlier this week, one customer went to court claiming that the government overreached by confiscating the belongings in every security box without showing why it suspected each person of committing crimes.

Armed with a warrant, FBI and Drug Enforcement Administration agents raided the business on March 22. They took several days to go through all the boxes and move the valuables to an FBI warehouse, according to court papers. Although the warrant

remains under seal, prosecutors argued Friday that the magistrate judge who approved it gave permission for the sweeping seizures.

"The government seized the nests of safety deposit boxes because there was overwhelming evidence that USPV was a criminal business that conspired with its criminal clients to distribute drugs, launder money, and structure transactions to avoid currency reporting requirements, among other offenses," they said in papers filed in Los Angeles federal court.



PAID CONTENT

**Is Partnership Data the Solution to the Cookieless Future?** ↗

By Backstage with the Brand

Mars' Global Head of Media on nailing your media mix, the amplifying power of data and navigating a world without cookies.

The search, prosecutors claimed, turned up an unspecified number of weapons, along with fentanyl, OxyContin and "huge stacks of $100 bills" sniffed out by drug dogs. One box allegedly contained $1 million in cash.

In the March 9 indictment that was unsealed Friday, a federal grand jury charged U.S. Private Vaults with three counts of conspiracy — to launder money, distribute narcotics and structure cash transactions to dodge detection. None of the people who are allegedly behind the operation were named in the court records. It is was not immediately clear whether any individuals will face criminal charges as well.

Nobody answered the phone Friday at U.S. Private Vaults, and the voicemail was not accepting messages. Representatives of the company could not be reached.



Federal agents relied on informants and at least one undercover officer to gather information about transactions that took place at U.S. Private Vaults. (Irfan Khan / Los Angeles Times)

U.S. Private Vaults shared its storefront with Gold Business, a jewelry and precious metals dealer that was named as a co-conspirator. Gold Business helped customers convert cash to gold and avoid federal reporting requirements for currency transactions exceeding $10,000, prosecutors alleged.

Federal agents relied on multiple informants and at least one undercover police officer who posed as customers to gather information about transactions that allegedly took place inside the store, the indictment shows.

The government unsealed the indictment just an hour before a court-issued deadline to respond to legal filings by a U.S. Private Vaults customer, who alleged the government's search of what hundreds of people stored in their boxes was unconstitutional.

The unnamed customer, listed in court papers as John Doe, said the search warrant should not have authorized seizure of the jewelry, currency and bullion that he kept in his three boxes at U.S. Private Vaults, because there was no probable cause to suspect the person committed a crime.

"Just as the tenant of each apartment controls that space and therefore has a reasonable expectation of privacy in it, each of the hundreds of renters of safety deposit boxes ... has a separate reasonable expectation of privacy in his or her separately controlled box or boxes," the person's attorney, Benjamin N. Gluck, wrote in the complaint.

Gluck is seeking a court order to stop the FBI from requiring anyone whose items were seized and inventoried by the government to identify themselves and subject themselves to an investigation to verify their legal ownership of the valuables.

Gluck alleged that the government was holding his client's illegally seized goods "hostage" until he identifies himself, citing a description by assistant U.S. Atty. Andrew Brown of the procedure for retrieving valuables.

"Though Mr. Brown perhaps deserves credit for his candor, his announced plan is grossly improper and manifestly unconstitutional," Gluck wrote in court papers.

Brown conceded in court papers that some U.S. Private Vaults customers were "honest citizens to whom the government wishes to return their property.

"But the majority of the box holders are criminals who used USPV's anonymity to hide their ill-gotten wealth," he wrote. "To distinguish between honest and criminal customers, the government must examine the specific facts of each box and each claim, precisely what the anonymous plaintiff wants to prevent by refusing to disclose not only his identity, but even the specific boxes he claims are his."

CALIFORNIA



Be     Hills store let criminals store drugs and cash, prosecutc     / - Los Angeles Times

**Suspect in Orange shooting is charged with murder as victims are identified**

April 2, 2021

Nina Marino, a Beverly Hills attorney with several clients who stored things at U.S. Private Vaults, said that even if some customers used the boxes for criminal activity, "that does not authorize the government's conduct in this sweeping action of not only seizing innocent box owners' property, but viewing that property."

"Every single person that paid money on a monthly basis did that with the expectation of maintaining their anonymity, and it's just outrageous that the government has such low regard for the 4th Amendment and for an individual's expectation of privacy," she said.

Beth Colgan, a UCLA law professor, called the dispute "fascinating," saying the big question is whether the sealed search warrant shows there was probable cause to believe evidence of criminal wrongdoing could be found in virtually all of the safe deposit boxes.

"I would just be very surprised if a judge had approved a warrant that would allow the FBI to go through every single box absent evidence that the entire system was corrupt," she said. "Maybe they have the evidence, and that's the thing we don't know."

On Friday, signs of the raid remained. A hole in the drywall with wires exposed was all that remained of the eye and hand scanner customers used to gain access to the facility. Directly above the hole was a sign that read: "Position green dot between your eyes." Black duct tape covered a security camera and door locks.

Taped to the front door was a paper instructing customers "to initiate a claim for your U.S. Private Vaults box" on the FBI's website.



A sign taped to the front door of U.S. Private Vaults instructs customers on how to recover their possessions. (Irfan Khan / Los Angeles Times)

CALIFORNIA



## The perils of parenting through a pandemic

What's going on with school? What do kids need? Get 8 to 3, a newsletter dedicated to the questions that keep California families up at night.

SIGN ME UP

You may occasionally receive promotional content from the Los Angeles Times.

 Michael Finnegan

🐦 Twitter   📷 Instagram   ✉ Email   f Facebook

Michael Finnegan is a Los Angeles Times reporter covering federal courts and law enforcement. He previously covered state and national politics, including the 2020 presidential campaign.

Show Comments

 Latest in California

READ MORE

## L.A. County to follow new federal mask guidance

SUBSCRIBERS ARE READING

CALIFORNIA

**Kristin Smart vanishing suspect was later accused of sexually assaulting women in L.A.**



## Los Angeles Times

CALIFORNIA

# After FBI seizure of safe deposit boxes in Beverly Hills, legal challenges mount



William, who wishes to conceal his identity, is photographed at U.S. Private Vaults in Beverly Hills where he had stored cash and precious metals before federal agents descended on the Beverly Hills strip mall last month and seized the contents of hundreds of safe deposit boxes inside the store, on Wednesday, April 7, 2021.  (Christina House / Los Angeles Times)

By MICHAEL FINNEGAN  |  STAFF WRITER

APRIL 8, 2021 6 AM PT



A retired flooring contractor was watching television one night last month when he saw a news report about federal agents raiding U.S. Private Vaults, a store in a Beverly Hills strip mall that let customers rent safe deposit boxes anonymously.

He knew the place well. It's near his home and, for years, he has rented a long, narrow box there to keep about $60,000 in cash, gold and silver. It also contained the title certificate for his pickup truck.

The 69-year-old man, who declined to be named because of privacy and safety concerns, said he has kept the stockpile of currency and precious metals since getting spooked by the 2008 financial crash. "You never know what's going to happen, the way the world's going today," he said.

That financial net vanished — at least for now — in the raid.

ADVERTISEMENT

Federal agents descended on U.S. Private Vaults in a Beverly Hills strip mall last month and seized the contents of hundreds of safe deposit boxes inside the store, on Wednesday, April 7, 2021. (Christina House/Los Angeles Times)

Armed with a warrant, agents with the FBI and Drug Enforcement Administration pulled each of the store's several hundred boxes out of the walls and seized all the contents. It took five days to inventory everything and take it to an undisclosed warehouse. Prosecutors said drugs, weapons and stacks of currency that drew the attention of drug-sniffing dogs were discovered.

To reclaim property, people must identify themselves to federal authorities and prove they are the rightful owners of the items — a bar that may prove challenging to clear when dealing with cash, gold, heirloom jewelry and other undocumented items.

The raid has set off legal challenges from five box holders who say the government violated the constitution's ban on unreasonable search and seizure.

U.S. District Judge R. Gary Klausner on Tuesday declined one customer's request for an emergency order that would have blocked prosecutors from using the boxes' contents as evidence in the investigation. It also would have stopped the FBI from requiring box holders to identify themselves as a condition of getting their valuables back.

Klausner, however, left open the possibility that the sweeping nature of the seizures violated the box renters' rights.

Klausner's ruling came in the first of the five lawsuits filed by U.S. Private Vaults customers, who estimate there were 600 to 1,000 boxes in the store.

U.S. Private Vaults shut down its business in a Beverly Hills strip mall in late March after federal agents seized the contents of its safe deposit boxes during a five-day search. (Joel Rubin / Los Angeles Times)

ADVERTISEMENT

Prosecutors have argued in court filings that they are on solid legal footing, saying they can prove the company itself is a criminal enterprise and that most of the box holders were criminals hiding "ill-gotten wealth." But they also acknowledged in court records that innocent people had been swept up in the case. No charges have been filed against any of the store's customers.

Legal scholars say the U.S. attorney's office in Los Angeles is testing constitutional restraints on the government's power to seize private property.

"This was at bottom executing a warrant at a business," said Orin Kerr, a UC Berkeley law professor. "What makes it different is that hundreds of customers had their own 4th Amendment protected spaces in their safe deposit boxes. That's what makes this unusual. It's not just the business. It's also users storing their things — some engaging in criminal activity, others not, I assume."

A federal grand jury indicted U.S. Private Vaults last month on three counts of conspiracy — to distribute drugs, launder money and structure cash transactions to dodge currency reporting rules. The indictment lists four unnamed people affiliated with the business as co-conspirators but has not charged them. More charges could be filed later.

ADVERTISEMENT

In a court statement defending the seizure, FBI agent Kathryn E. Bailey said agents searching the boxes found fentanyl, OxyContin, guns, gold bullion and stacks of $100 bills. Some of the largest-sized boxes each contained more than $1 million in cash, she said.

Customers who sued the government said prosecutors had no right to seize the contents of their boxes because they had no evidence that would give them reason to suspect the customers were stashing contraband or committing some other crime.

Jeffrey B. Isaacs, an attorney for one customer, accused prosecutors of trying to force people who want their property back to reveal their names to the FBI, subject themselves to criminal investigation and prove they lawfully acquired what they stored in the boxes.

"This is as illegal a search and seizure as I've ever seen," Isaacs said. "It's rather shocking."

ADVERTISEMENT

CALIFORNIA

questions FBI seizure of Beverly Hills safe deposit bo:   Los Angeles Times

**Beverly Hills store let criminals stash guns, drugs and cash in vault at strip mall, prosecutors say**

April 2, 2021

His client is identified in court papers by the pseudonym James Poe. The four others who have sued are also seeking to retain their anonymity: John Doe, Charles Coe, Michael Moe and Richard Roe.

The retired Pico-Robertson contractor has not sued, but tried to file a theft report with Beverly Hills police, who refused to take it.

Klausner's ruling rejected Doe's request for a temporary restraining order that would have unsealed the court-approved seizure warrant; stopped inspection of any box the government has no specific justification to search; barred agents from using anything they found in such boxes in criminal investigations; and stopped the FBI from requiring personal information from people trying to retrieve their valuables.

ADVERTISEMENT

Doe rented three boxes to store jewelry, currency and bullion, but sought a court order that applied to the whole store.

"It is possible that the government's seizure and search of those other boxes violated the 4th Amendment rights of their owners," Klausner wrote. But the request was "far broader than necessary" to protect Doe from harm.

The court is still considering Doe's request for a preliminary injunction. Benjamin Gluck, his attorney, said "the government's scheme is manifestly unconstitutional."

In court papers filed last week, Assistant U.S. Atty. Andrew Brown said agents "seized the nests of safety deposit boxes because there was overwhelming evidence" that U.S. Private Vaults "was a criminal business." The company's promise of anonymity attracted criminals looking to safeguard cash, he said. Brown acknowledged some customers were "honest citizens" who should get their things back.

ADVERTISEMENT

Standards for what makes a search legal have shifted in recent years as digital communications pose new challenges. Courts have required warrants for searches of locations where people have a "reasonable expectation of privacy." Exceptions, however, have been made when law enforcement has sought personal data and other things that suspects have technically put in the possession of a third party like a phone company or storage facility.

In 2018, the Supreme Court narrowed those exceptions, ruling that police need a warrant to collect cellphone tracking records that can reveal everywhere a person goes.

Even though the location data is kept by a private company, Chief Justice John G. Roberts wrote, "we decline to grant the state unrestricted access."

Hadar Aviram, a UC Hastings law professor, said the warrant that remains under seal in the U.S. Private Vaults case is the key to whether prosecutors met the legal standard for breaking the box holders' expectation of privacy. Prosecutors would need to show they had probable cause to believe evidence of criminal activity would be found in a substantial portion of the boxes — perhaps close to a third of them, she said. "There's good cause for concern here," she said.

Kerr, the UC Berkeley law professor, said he expected the seizure of all the boxes would ultimately hold up in court, but the legal question still did not appear "cut and dry."

ADVERTISEMENT

How does the 4th Amendment apply to the "U.S. Private Vaults" case, busting the Beverly Hills store where people could anonymously store guns and drugs (and anything else)?

A thread. https://t.co/I1ELUq9DJo

— Orin Kerr (@OrinKerr) April 4, 2021

Robert Frommer, senior attorney at the libertarian Institute for Justice in Virginia, called the seizure of the boxes "egregious."

"Those property owners have their own independent rights to be secure in their persons and property," he said. "The government can't come in there and say, because the business allegedly did something wrong, those people are not entitled to the protections of the 4th Amendment."

CALIFORNIA



## The perils of parenting through a pandemic

What's going on with school? What do kids need? Get 8 to 3, a newsletter dedicated to the questions that keep California families up at night.

SIGN ME UP

You may occasionally receive promotional content from the Los Angeles Times.



Michael Finnegan

🐦 Twitter   📷 Instagram   ✉ Email   f Facebook

Michael Finnegan is a Los Angeles Times reporter covering federal courts and law enforcement. He previously covered state and national politics, including the 2020 presidential campaign.

Show Comments

C






















info@uspriva___lts.com (mailto:info@usprivatevaults.com) | *QUARA___E HOURS*
(https://www.usprivatevaults.com/location-hours)

(https://www.facebook.com/USPrivateVaults)

(https://www.youtube.com/user/USPrivateVaults)



# (https://www.usprivatevaults.com/

≡

USPV rents safe deposit boxes like those found at banks but with two primary differences.

Leave a message

## Complete Privacy

Clients are identified through biometric (iris scan and hand geometry) technology.

## Enhanced Security

Client's assets are protected with security measures not found at banks:

- Our structural steel, reinforced concrete vault (built by American Vault Corp.), was designed to withstand natural disasters such as fires and earthquakes as well as assaults that could occur in the event of civil unrest.
- Access to the vault requires biometric (iris scan/hand geometry) identification.
- ADT monitors the vault 24 hours a day via video "guard tours" from its central station.
- The vault is equipped with motion detectors, heat sensors, and other sophisticated security

Se habla español

measures to detect the presence of intruders after regular business hours.

- In the event of any perceived threat, ADT shall alert the Beverly Hills Police department (less than five minutes away) as well as their private armed response team.
- Our security system features multiple layers of redundancy.
- The vault is sealed and cannot be opened except during prescribed business hours.

**Have additional questions? Check our FAQ (/frequently-asked-questions-faq)(Frequently Asked Questions) or Contact Us (/contact-us).**

## Schedule An Appointment

| 04/15/2021 | 10:00AM ⌄ |

| enter email (optional) |

*\* enter email for appointment reminder*

Submit

## Video



Leave a message

---

**⚲ LOS ANGELES LOCATION**

9182 West Olympic Boulevard

Beverly Hills, CA 90212 (https://goo.gl/maps/MyJJ6eGDoqEWxzRwR7)

---

**🅱 CONTACT US**

888-948-8778 (tel:888-948-8778)

info@usprivatevaults.com (mailto:info@usprivatevaults.com)

**⏱ HOURS**

**Se habla español**

**Monday – Friday: 10AM to 5PM**
**Saturday: 11AM to 4PM**
**\* temporary quarantine hours**

*Special Holiday Hours May Apply*

Insurance by:



**SDBIC**

safedepositboxinsurance.com (https://safedepositboxinsurance.com/)

©2011-2019 U.S. Private Vaults, Inc. - All rights reserved worldwide

Leave a message

**Se habla español**

**D**

## **SAMPLE COIN OPERATED LOCKERS**





E



4/10/2021                          — U.S. Private Vaults Claim Form



*Forms*

Home · U.S. Private Vaults Claim Form

## U.S. Private Vaults
## Claim Form

To make a claim for property stored at U.S. Private Vaults in Beverly Hills, California, please provide the following information. An FBI agent will contact you for additional details.

Contact Information

First Name

Middle Name

Last Name

Best Contact Number

Alternate Contact Number

Email Address

Address Line 1

Address Line 2

City

State        ---------N/A----------        ⌄
Country

ZIP/Postal Code

**I/We fully understand that it is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning the facts on this form as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.**

Captcha

☐  I'm not a robot
                              reCAPTCHA
                              Privacy · Terms

Submit

Accessibility | eRulemaking | Freedom of Information/Privacy Act | Legal Notices | Legal Policies and Disclaimers | Links | Privacy Policy | USA.gov | White House
FBI.gov is an official site of the U.S. government, U.S. Department of Justice

**F**

 Gmail                                    **Brian Silber, Esq. <silberlaw@gmail.com>**

## USPV Claims
1 message

**USPVclaims@FBI.GOV** <USPVclaims@fbi.gov>                     Thu, Apr 8, 2021 at 7:03 PM
To: "Brian Silber, Esq." <silberlaw@gmail.com>



Dear Claimant:

Thank you for submitting your claim with regard to property at U.S.
Private Vaults.  We understand that you are concerned about
your claim.  Currently, all property seized is in a secure FBI
facility.  FBI agents and staff are working diligently, in a methodical
and systematic way, to process all claims and address each safe deposit
box that is in our custody.  Because of the large number of safe deposit
boxes, this process takes time.  Submitting more than one claim or
calling the FBI Field Office to make individual inquiries will only slow
the process.  Additionally, it is important to us that we ensure
property is returned to the lawful owner, and not someone making a
false claim.

Within the next 30 to 60 days, someone from the FBI will contact
you either to make arrangements to return your property, or to request
additional information.

We thank you for your patience.

Sincerely,

FBI Los Angeles

**G**

DocuSign Envelope ID: A084518A-FAEA-401C-   8C5B93F60647



TALENFELD
INVESTIGATIONS

**DATE:**      **April 27 ,2021**

**TO:**        **Law Offices of Brian Silber, P.A.**

**FROM:**      **Eric Talenfeld, Private Investigator**

**RE:**        **FBI, DEA, & USPIS Press Release Search re:**

           *United States v. U.S. Private Vaults, Inc.*
           **Case No. 21-CR-00106-MCS**
           **U.S. District Court, Central District of California**

---

The undersigned is a licensed private investigator in the State of Florida, license number C1800285. The undersigned is the owner of TALENFELD INVESTIGATIONS, LLC, Florida agency number A1800230. Between March 22, 2021 and March 26, 2021, federal law enforcement agencies raided U.S. PRIVATE VAULTS, INC. ("USPV"), located in Beverly Hills, California. During that raid, law enforcement seized safety deposit boxes and the contents of those boxes from USPV and its respective tenants.

The undersigned investigator was tasked with checking all available press releases published by the DEA, FBI, and USPIS to identify any information or public notices those agencies may have published about the raid. The purpose of this investigation was to determine if any information about the seizure of the safety

DocuSign Envelope ID: A084518A-FAEA-401C-!    8C5B93F60647



deposit boxes and their contents was released and to determine the procedures a potential claimant could follow to claim their property and get it back. DEA, FBI, and USPIS websites and social media accounts were reviewed for this purpose.

**DEA**

The website for the DEA press releases is "https://www.dea.gov/press-releases" which allows a person to check nationally and filter by location such as Los Angeles. There were approximately one hundred (100) articles and releases in the national search and one (1) article on their Los Angeles page between March 22, 2021 and April 26, 2021. Out of all these publications, <u>zero</u> (0) have any mention of USPV.

**FBI**

The website for the FBI press releases is "https://www.fbi.gov/news/pressrel" which allows a person to check nationally and filter by location such as Los Angeles. There were approximately seven seven-hundred and eight four (784) articles and releases in the national and twenty-one (21) on their Los Angeles page between March 22, 2021 and April 26, 2021. Out of all these publications, <u>zero</u> (0) have any mention of USPV.

The only page that has any information at all on the FBI website is https://forms.fbi.gov/u-s-private-vaults-claim-form. This page is not easy to find on

DocuSign Envelope ID: A084518A-FAEA-401C-      8C5B93F60647



the FBI website unless one already has the link because it is buried on their form page. Additionally, this page is a webform that asks for personal information. It does not provide any information about the seizure or claim process at all. It merely asks for name, address, phone number, and email.

## USPIS

The website for USPIS press releases is "https://www.uspis.gov/news" which allows a person to check nationally for any news release. There were approximately forty (40) articles and releases in the national search March 22, 2021 until April 27, 2021. Out of all these publications, zero (0) have any mention of USPV.

## Social Media and Search Engines

The undersigned also undertook a thorough look at all social media outlets associated with the FBI, DEA, and USPIS on social media pages such as Twitter with the following Twitter handles:

- FBI - @FBI, @FBILosAngeles
- DEA - @DEAHQ, @DEALosAngels
- USPIS - @USPISPressRoom, @USPIS_LA

Each agency has a national Twitter page and a subsequent Los Angeles field office page as noted above. The feed from all six (6) of these Twitter pages had zero (0) mention of anything related to USPV even though they are all extensively used and updated. Additionally, Google searches were attempted with various search terms and queries including "U.S. Private Vaults Press Releases", "U.S. Private Vaults

DocuSign Envelope ID: A084518A-FAEA-401C-‌ 8C5B93F60647



Raid", "How to Claim U.S. Private Vaults Box", and "Claim Form U.S. Private Vaults". The undersigned then reviewed he first six (6) pages of Google results to determine if there were any government publications regarding the USPV raid.

The previously mentioned FBI Claim form was the only government website page to come up. This result only came up under the query for "Claim Form U.S. Private Vaults". The other search terms yielded results from countless media organizations such as the Los Angeles Times, the New York Post, and Yahoo News. However, no publications were found from any government agency but for the FBI's claim form webpage.

## CONCLUSION

After a thorough search, no notices or other information have been published by DEA, FBI, or USPIS concerning the raid or seizure of property at USPV.

## OATH PURSUANT TO 28 U.S.C. §1746

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 27ᵀᴴ day of April, 2021 at Fort Lauderdale, Florida.

DocuSigned by:

*Eric Talenfeld*

**Eric Talenfeld**
Lic. #: C1800285