TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
VICTOR A. RODGERS (Cal. Bar No. 101281)
MAXWELL COLL (Cal. Bar No. 312651)
Assistant United States Attorneys
Major Frauds/Asset Forfeiture/
General Crimes Sections
 1100/1400/1200 United States Courthouse
 312 North Spring Street
 Los Angeles, California 90012
 Telephone: (213) 894-0102/2569/1785
 Facsimile: (213) 894-6269/0142/0141
 E-mail: Andrew.Brown@usdoj.gov
    Victor.Rodgers@usdoj.gov
    Maxwell.Coll@usdoj.gov

Attorneys for Defendants
UNITED STATES OF AMERICA and
TRACY L. WILKISON and KRISTI KOONS JOHNSON
IN THEIR OFFICIAL CAPACITY ONLY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| LOUIS LOE, | Case No. 2:21-cv-03348-RGK-MAR |
|    Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT FOR LACK OF SUBJECT MATTER JURISDICTION AND FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF ANDREW BROWN, JUSTIN PALMERTON, JESSIE MURRAY AND VICTOR A. RODGERS; [PROPOSED] ORDER GRANTING MOTION LODGED UNDER SEPARATE COVER** |
|    v. | |
| UNITED STATES OF AMERICA, ET AL., | |
|    Defendants. | |
| | Date:   August 23, 2021 |
| | Time:   9:00 a.m. |
| | Courtroom: 850, the Honorable R. Gary Klausner |

**EXHIBIT A**
**19**

**NOTICE OF MOTION**

1  
2  PLEASE TAKE NOTICE that on August 23, 2021 at 9:00 a.m., or as soon

3  thereafter as the matter may be heard, in the courtroom of the Honorable R. Gary

4  Klausner, United States District Court, Courtroom 850, Roybal Federal Building and

5  U.S. Courthouse, 255 East Temple Street, Los Angeles, California 90012, defendants

6  United States of America and Tracy L. Wilkison and Kristi Koons Johnson in their

7  official capacity only (collectively, "the government") will and hereby do move,

8  pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), to dismiss the complaint for lack of

9  subject matter jurisdiction and for failure to state a claim upon which relief can be

10  granted.  This Motion is made following the conference of counsel pursuant to Local

11  Rule 7-3 which took place on June 14, 2021 (see Rodgers Decl. ¶ 2), and is made on the

12  grounds that there is no subject matter jurisdiction over this action and plaintiff's

13  complaint fails to state a claim upon which relief can be granted.

14  This motion is based upon this notice of motion and motion; the attached

15  memorandum of points and authorities and declarations of Andrew Brown, Victor A.

16  Rodgers, Justin Palmerton and Jessie Murray; the proposed order granting the motion

17  (lodged under separate cover); all pleadings and papers on file in this action; and such

18  further matters as may be presented at any hearing on this Motion, and matters of which

19  the Court may take notice.

20  Dated: July 2, 2021                   Respectfully submitted,

21                                        TRACY L. WILKISON  
                                          Acting United States Attorney  
22                                        SCOTT M. GARRINGER  
                                          Assistant United States Attorney  
23                                        Chief, Criminal Division

24                                        _____/s/_____  
                                          ANDREW BROWN  
25                                        VICTOR A. RODGERS  
                                          MAXWELL COLL  
26                                        Assistant United States Attorneys

27                                        Attorneys for Defendants  
                                          UNITED STATES OF AMERICA, et al.
28  
**EXHIBIT A**  
**20** 1

**<u>TABLE OF CONTENTS</u>**

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

I.  INTRODUCTION ........................................................................1

II.  STATEMENT OF FACTS.............................................................1

III.  ARGUMENT ..........................................................................3

A.  The Standards For Motions To Dismiss Under Fed R. Civ. P. 12 For A Lack of Subject Matter Jurisdiction And Failure To State A Claim Upon Which Relief Can be Granted ......................................................4

B.  Plaintiff's Complaint Seeks To Invoke The Equitable Jurisdiction Of This Court ........................................................................6

C.  Plaintiff Cannot Discharge His Burden Of Showing Equitable (And Therefore Subject Matter) Jurisdiction Exists Because The Commencement Of Administrative Forfeiture Proceedings Provides Plaintiff With An Adequate Remedy At Law And Divests The Court Of Jurisdiction To Hear This Case ............................................7

   1.  The Impact Of Initiating Administrative Forfeiture Proceedings.......7

   2.  Plaintiff's Submission Of A Claim To The FBI To Contest The Administrative Forfeiture Does Not Change The Analysis.............10

D.  Plaintiff Has Not Discharged His Burden Of Showing That He Should Be Allowed To Litigate This Case Using A Pseudonym.............11

   1.  Plaintiff's Need For Anonymity ......................................12

     a.  Severity of The Threatened Injury And Reasonableness Of Plaintiff's Fear ......................................12

     b.  Plaintiff's Vulnerability To Retaliation................................15

   2.  The Prejudice To The Government ....................................15

   3.  The Public's Interest ................................................12

IV.  CONCLUSION ......................................................................18

DECLARATION OF AUSA ANDREW BROWN.......................................19

DECLARATION OF SPECIAL AGENT JUSTIN PALMERTON.........................41

DECLARATION OF SUPORVISORY AGENT JESSIE MURRAY.......................43

DECLARATION OF AUSA VICTOR RODGERS.......................................48

**EXHIBIT A**
**21**

TABLE OF AUTHORITIES

**Federal Cases**

A.G. v. Unum Life Ins. Co. of America,
   2018 WL 903463 (D. Or. Feb. 14, 2018)..................................................12, 14

Abernathy v. Kral,
   305 F. Supp. 3d 795 (N.D. Ohio 2018) ................................................8

Baranski v. Fifteen Unknown Agents of ATF,
   195 F. Supp. 2d 862 (W.D. Ky. 2002)................................................10

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007)..................................................................6

Bender v. Williamsport Area School Dist.,
   475 U.S. 534 (1986)................................................................4, 5

Billingsley v. C.I.R.,
   868 F.2d 1081 (9th Cir. 1989)......................................................5

Caltex Plastics, Inc. v. Lockheed Martin Corp.,
   824 F.3d 1156 (9th Cir. 2016).....................................................5

CFK, LLC v. United States,
   324 F.R.D. 236 (D. Ut. 2018)......................................................8

DaimlerChrysler Corp. v. Cuno,
   547 U.S. 332 (2006)..................................................................5

Doe v. John F. Kennedy Univ.,
   2013 WL 4565061 (N.D. Cal. Aug. 27, 2013)...................................17

Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate,
   596 F.3d 1036 (9th Cir. 2010)............................................... passim

Does I thru XXIII v. Advanced Textile Corp.,
   214 F.3d 1058 (9th Cir. 2000)............................................... passim

Faith Action For Community Equity v. Hawaii,
   2014 WL 320587 (D. Haw. Jan. 29, 2014) ........................................14

Haltiwanger v. United States,
   494 F. Supp. 2d 927 (N.D. Ill. 2007) ...............................................9

**EXHIBIT A**
**22**

## TABLE OF AUTHORITIES CONTINUED

Ibarra v. United States,
   120 F.3d 472 (4th Cir. 1997) ............................................................. 9

In Re Return of Seized Prop. (Jordan),
   625 F. Supp. 2d 949 (C.D. Cal. 2009) ................................................ 8

In Re The Return of Seized Property, Specifically All Funds Seized from
   BoundlessRise, LLC,
   2017 WL 4180149 (C.D. Cal. Aug. 30, 2017) .................................... 8

Jessica K. v. Eureka City Schools Dist.,
   2014 WL 689029 (N.D. Cal. Feb. 21, 2014) ..................................... 17

Massey v. Ojaniit,
   759 F.3d 343 (4th Cir. 2014) ............................................................. 6

Ramsden v. United States,
   2 F.3d 322 (9th Cir. 1993) ................................................................. 7

Roberts v. Corrothers,
   812 F.2d 1173 (9th Cir. 1987) ........................................................... 5

Safe Air for Everyone v. Meyer,
   373 F.3d 1035 (9th Cir. 2004) ........................................................... 5

Seismic Reservoir 2020, Inc. v. Paulsson,
   785 F.3d 330 (9th Cir. 2015) ............................................................. 5

Thornhill Pub. v. General Tel. and Electronics Corp.,
   594 F.2d 730 (9th Cir. 1979) ............................................................. 5

$8,050.00 in U.S. Currency v. United States,
   307 F. Supp. 2d 922 (N.D. Ohio 2004) ............................................. 9

United States v. $174,206.00 in U.S. Currency,
   320 F.3d 658 (6th Cir. 2003) ........................................................... 16

United States v. $30,670 in U.S. Funds,
   403 F.3d 448 (7th Cir. 2005) ........................................................... 16

United States v. 2nd Amendment Guns, LLC,
   917 F. Supp. 2d 1120 (D. Or. 2012) ........................................... 10, 11

**EXHIBIT A**
**23**

TABLE OF AUTHORITIES CONTINUED

United States v. 1982 Yukon Delta Houseboat,
  774 F.2d 1432 (9th Cir. 1985)..................................................................16

United States v. $8,850,
  461 U.S. 555 (1983)............................................................................6

United States v. Daccarett,
  6 F.3d 37 (2d Cir. 1993) ......................................................................16

United States v. Elias,
  921 F.2d 870 (9th Cir. 1990)............................................................7, 8, 9

United States v. Ibrahim,
  522 F.3d 1003 (9th Cir. 2008)................................................................6

United States v. Martinson,
  809 F.2d 1364 (9th Cir. 1987)................................................................6

United States v. Naovalath,
  2008 WL 2885965 (D. Minn. Jul. 22, 2008)..................................................9

United States v. One 1974 Learjet,
  191 F.3d 668 (6th Cir. 1999).................................................................9

United States v. One 1987 Jeep Wrangler,
  972 F.2d 472 (2d Cir. 1992)..................................................................10

United States v. Ritchie,
  342 F.3d 903 (9th Cir. 2003).................................................................6

United States v. Stoterau,
  524 F.3d 988 (9th Cir. 2008)..................................................... 12, 13, 17

United States v. U.S. Currency in the Amount of $146,800,
  1997 WL 269583 (E.D.N.Y. Apr. 28, 1997).................................................10

United States v. U.S. Currency, $42,500.00,
  283 F.3d 977 (9th Cir. 2002).................................................................16

United States v. U.S. Currency, $83,170.78,
  851 F.2d 1231 (9th Cir. 1988)...........................................................7, 8, 9

**EXHIBIT A**
**24**

## TABLE OF AUTHORITIES CONTINUED

United States v. Voraveth,
 2008 WL 4287293 (D. Minn. Jul. 1, 2008)............................................................9

Von Saher v. Norton Simon Museum of Art at Pasadena,
 592 F.3d 954 (9th Cir. 2010)......................................................................................6

Warren v. Fox Family Worldwide, Inc.,
 328 F.3d 1136 (9th Cir. 2003)....................................................................................6

White v. Lee,
 227 F.3d 1214 (9th Cir. 2000)....................................................................................5

**Federal Statutes**

18 U.S.C. § 983 ..............................................................................................................9

18 U.S.C. § 983(a)(3)(A) ......................................................................................11, 17

18 U.S.C. § 983(a)(3)(B) ......................................................................................11, 17

18 U.S.C. § 983(f)........................................................................................................11

19 U.S.C. § 1608 ...........................................................................................................8

**Federal Rules**

Fed. R. Civ. P. 10(a).....................................................................................................11

Fed R. Civ. P. 12 ...........................................................................................................4

Fed. R. Civ. P. 12(b)(1) .............................................................................................1, 5

Fed. R. Civ. P. 12(b)(6) .............................................................................................1, 5

Fed. R. Civ. P. 12(h)(3) .................................................................................................5

Fed. R. Crim. P. 41 ......................................................................................................10

Fed. R. Crim. P.41(e) ...............................................................................................6, 10

Fed. R. Crim. P. 41(f)(1)(C) .........................................................................................2

Fed. R. Crim. P. 41(g) .........................................................................................passim

**EXHIBIT A**
**25**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## INTRODUCTION

Defendants United States of America and Tracy L. Wilkison and Kristi Koons Johnson in their official capacity only (collectively, "the government") respectfully submit this memorandum of points and authorities in support of their motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.  Because the government has commenced forfeiture proceedings against the currency plaintiff Louis Loe seeks to have returned, plaintiff cannot show that subject matter jurisdiction lies, plaintiff has an adequate remedy at law and the Court is divested of jurisdiction to hear plaintiff's case.  Even if plaintiff could show that subject matter jurisdiction exists, this case should still be dismissed because plaintiff has not established that plaintiff's need for anonymity in prosecuting this case using a pseudonym outweighs the prejudice to the government and the public's interest in knowing the identity of all parties in this lawsuit.

## II.

## STATEMENT OF FACTS

Plaintiff Louis Loe has filed an unverified complaint alleging three claims against the government, namely his first, third and fourth causes of action.[1]  The first cause of action for return of property pursuant to Fed. R. Crim. P. 41(g) and second cause of action for declaratory relief allege violations of the Fourth and Fifth Amendments arising from the government's allegedly unlawful search and seizure of the currency inside safety deposit box number 2300, which safety deposit box was situated at US Private Vaults ("USPV") in Beverly Hills, California.  Docket No. 1 (complaint ¶¶ 3, 28, 30, 71-74 and 84-87).  Plaintiff's fourth cause of action seeks an order requiring the government

---

[1] Plaintiff's Bivens claim in his second cause of action is against only defendants Kristi Koons Johnson and the Doe defendants who are sued in their individual capacity. The instant motion is not filed on behalf of those defendants, but instead only as to the causes of action against "the government" as defined above.

1  to provide pursuant to Fed. R. Crim. P. 41(f)(1)(C), without plaintiff having to identify

2  himself, the warrant for and receipt for property taken from box number 2300.

3  Complaint ¶¶ 2 and 88-92. The complaint further alleges, while making no

4  representation regarding plaintiff's gender (and the government in this brief uses

5  masculine pronouns to refer to plaintiff) and citing Does I thru XXIII v. Advanced

6  Textile Corp., 214 F.3d 1058, 1067-68 (9th Cir. 2000) as authority, that plaintiff sues

7  using a pseudonym to protect himself from the risk of criminal investigation and

8  prosecution, and from injury, harassment, embarrassment and retaliation based merely

9  on the fact that he is a USPV box holder. Complaint ¶ 14 and footnote 1 at page 4.

10     Plaintiff alleges that the safe deposit boxes USPV leases to the public include

11  enhanced security features. Complaint ¶ 27. The features include that USPV identifies

12  its customers by encrypted biometric information in the form of an iris scan and does not

13  use other personal identifying information to identify box holders; USPV does not

14  maintain keys to box holders' safe deposit boxes, each box holder maintains all keys to

15  the box holders' box and can only access the vault containing their box through an iris

16  and/or biometric hand geometry scan; and USPV offers 24/7 monitoring by the ADT

17  security company through a video link at ADT and outside motion detectors, heat

18  sensors and other sophisticated security measures to detect the presence of intruders after

19  regular business hours. Id.

20     In March 2021, a grand jury indicted USPV for conspiring with its customers to

21  launder money, distribute drugs, and structure financial transactions to avoid currency

22  reporting requirements. Brown Decl. ¶ 2 and Ex. A. The indictment provides that

23  USPV's business is predicated on "attract[ing] customers in possession of proceeds from

24  criminal offenses[.]" Id. (Ex. A [indictment at 3:21]). USPV allegedly did so by

25  "touting the anonymity of the safety deposit rentals" and "boasting that, unlike banks, its

26  anonymous safety deposit box rentals did not require customer information that 'can be

27  easily accessed by government agencies (such as the IRS)[.]' " (Ex. A [indictment at

28  3:23-28]).

**EXHIBIT A**
**27** 2

1    The government obtained a sealed criminal seizure warrant for, among other

2    things "[t]he nests of safety deposit boxes and keys" located at USPV, and the warrant

3    provides that it "does not authorize a criminal search or seizure of the contents of the

4    safety boxes[,]" that "agents shall follow their written inventory policies to protect their

5    agencies and the contents of the boxes" and that "agents shall inspect the contents of the

6    boxes in an effort to identify their owners in order to notify them so that they can claim

7    their property[.]" Brown Decl. ¶¶ 3 and 4 and Ex. B.

8    Between March 22 and 26, 2021, federal agents executed the seizure warrant and

9    removed the nests of safe deposit boxes, inventorying their contents in the process, as

10   authorized in the seizure warrant and discussed in the affidavit supporting it. Id.;

11   Palmerton Decl. ¶ 2; complaint ¶¶ 32, 34, 38 and 42(d)-(g). The inventory of the boxes'

12   contents revealed, among other items, firearms, illegal drugs, and anonymous stores of

13   wealth, mostly cash. Palmerton Decl. ¶ 2. Drug detecting dogs alerted to most, but not

14   all of the cash stashes. Id.

15   Plaintiff's complaint challenges the constitutionality of the procedure whereby the

16   government provided box holders the opportunity to request the return of seized property

17   (which procedure does not involve the asset forfeiture proceedings discussed below) and

18   provided plaintiff with a voluntary additional remedy that the government is not required

19   to provide when executing a warrant. Specifically, plaintiff alleges that USPV has been

20   closed since March 26, 2021, and has a sign affixed to the door that instructs box holders

21   to go to a FBI website that provides that, to make a claim for property stored at USPV, a

22   box holder (such as plaintiff) should provide his first, middle and last names and best

23   contact number so that a FBI agent can contact the box holder for additional details.

24   Complaint ¶¶ 38 and 39.

25   Based on counsel for plaintiff in a different case's (John Doe v. United States of

26   America, et al., Case No. 2:21-cv-02803) incorrect interpretation of a March 2021

27   conversation between himself and government counsel, plaintiff alleges that the

28   government will not provide a box holder with the search and seizure warrant unless a

**EXHIBIT A**

**28** 3

1   box holder identifies himself and will commence a criminal investigation of any box

2   holder who identifies himself in order to determine whether the box holder came by the

3   contents of the box holder's box legally.  Complaint ¶¶ 34-36.  However, the actual facts

4   as to whether the government will conduct a criminal investigation are set forth in the

5   attached declaration of Special Agent Justin Palmerton, which reflects that the

6   government is not conducting a criminal investigation of every USPV boxholder.

7   Palmerton Decl. ¶ 3.  Other than paragraph 36's allegations concerning a criminal

8   investigation, plaintiff's complaint provides no facts to justify his entitlement to sue

9   using a pseudonym.

10          On May 20, 2021, the FBI initiated administrative forfeiture proceedings as to

11   particular identified boxes' contents, including boxes containing currency like plaintiff's

12   box number 2300 which contained $250,100.00 plus boxes housing other assets, by

13   sending a written notice to USPV and other persons the FBI could identify as having a

14   potential interest in particular boxes.  Murray Decl. ¶ 2 and Ex. A.  The notice advised of

15   the FBI's commencement of the proceedings for specific boxes' contents and sets forth

16   how interested persons can submit a petition for remission or claim thereto.  Id.  After

17   counsel for the parties conducted their Local Rule 7-3 Conference of Counsel on June

18   14, 2021 regarding this motion, plaintiff submitted a claim to the FBI using her actual

19   true name, which the FBI received on or about June 17, 2021.  Murray Decl. ¶ 3  and

20   Rodgers Decl. ¶ 2.

21                                              **III.**

22                                        **ARGUMENT**

23   **A.      The Standards For Motions To Dismiss Under Fed. R. Civ. P.  12 For**

24   **        Lack of Subject Matter Jurisdiction And Failure To State A Claim**

25   **        Upon Which Relief Can Be Granted.**

26          Federal courts should not adjudicate controversies where subject matter

27   jurisdiction is lacking because they "have only the power that is authorized by Article III

28   of the Constitution and the statutes enacted by Congress pursuant thereto."  Bender v.

**EXHIBIT A**

**29** 4

1   Williamsport Area School Dist., 475 U.S. 534, 541 (1986)(citation omitted).  As courts

2   of limited jurisdiction, the presumption is that a court is "without jurisdiction unless the

3   contrary appears affirmatively from the record."  Id. at 546 (internal quotes and citations

4   omitted).  The burden of establishing subject matter jurisdiction rests upon the party

5   invoking it [DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 n.3 (2006)] and "the

6   court is under a continuing duty to dismiss an action whenever it appears that the court

7   lacks jurisdiction."  Billingsley v. C.I.R., 868 F.2d 1081, 1085 (9th Cir. 1989) (internal

8   quotes and citation omitted); see also Fed. R. Civ. P. 12(h)(3).

9        Fed. R. Civ. P. 12(b)(1) subject matter jurisdiction attacks can be either facial or

10   factual.  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  In "a facial attack, the

11   challenger asserts that the allegations contained in a complaint are insufficient on their

12   face to invoke federal jurisdiction."  Safe Air for Everyone v. Meyer, 373 F.3d 1035,

13   1039 (9th Cir. 2004).  Conversely, in a factual attack "[n]o presumptive truthfulness

14   attaches to plaintiff's [complaint's] allegations" [Thornhill Pub. v. General Tel. and

15   Electronics Corp., 594 F.2d 730, 733 (9th Cir. 1979) (internal quotes and citation

16   omitted)], "the district court may review evidence beyond the complaint without

17   converting the motion to dismiss into a motion for summary judgment" [Safe Air for

18   Everyone, 373 F.3d at 1039 (citation omitted)], and courts may weigh the extrinsic

19   evidence in determining whether the facts show that a plaintiff has discharged plaintiff's

20   burden of demonstrating that subject matter jurisdiction exists [Roberts v. Corrothers,

21   812 F.2d 1173, 1177-78 (9th Cir. 1987)].

22        Courts should grant a Fed. R. Civ. P. 12(b)(6) motion to dismiss for failure to state

23   a claim upon which relief can be granted when a complaint fails to allege a cognizable

24   legal theory or sufficient factual support for a legal theory.  Caltex Plastics, Inc. v.

25   Lockheed Martin Corp., 824 F.3d 1156, 1159 (9th Cir. 2016).  Fed. R. Civ. P. 12(b)(6)

26   "authorizes a court to dismiss a claim on the basis of a dispositive issue of law."  Seismic

27   Reservoir 2020, Inc. v. Paulsson, 785 F.3d 330, 335 (9th Cir. 2015) (internal quotes and

28   citation omitted).  Also, a complaint must set forth "enough facts to state a claim for

**EXHIBIT A**
**30** 5

1   relief that is plausible on its face" to defeat the motion. <u>Bell Atlantic Corp. v. Twombly</u>,

2   550 U.S. 544, 570 (2007). On the motion, courts accept as true the well-pleaded

3   material factual allegations of a complaint but need not accept as true conclusory

4   allegations, unwarranted factual deductions, unreasonable inferences or legal

5   characterizations. <u>Bell Atlantic Corp.</u>, 550 U.S. at 555; <u>Warren v. Fox Family</u>

6   <u>Worldwide, Inc.</u>, 328 F.3d 1136, 1139 (9th Cir. 2003). Moreover, courts may consider

7   documents attached to or mentioned in a complaint and matters subject to judicial notice

8   without converting the motion into a summary judgment motion. <u>Massey v. Ojaniit</u>, 759

9   F.3d 343, 347-48 (4th Cir. 2014); <u>Von Saher v. Norton Simon Museum of Art at</u>

10  <u>Pasadena</u>, 592 F.3d 954, 960 (9th Cir. 2010).

11         **B.**   **Plaintiff's Complaint Seeks To Invoke The Equitable Jurisdiction Of**

12                **This Court.**

13         Because plaintiff seeks the return of property pursuant to Fed. R. Crim. P. 41(g),

14  plaintiff's complaint (or for that matter a motion, which is treated as a complaint)[2] seeks

15  to invoke the Court's equitable jurisdiction. Fed. R. Crim. P. 41(g) motions/complaints

16  are only appropriate where the return of property is sought and no criminal action

17  seeking forfeiture of the property is pending nor have civil forfeiture proceedings been

18  instituted. <u>See</u> <u>United States v. $8,850</u>, 461 U.S. 555, 569-70 (1983) (recognizing such

19  motions under former Fed. R. Crim. P. 41(e)). Because such a movant has no other

20  available forum to address the grievance, Fed. R. Crim. P. 41(g) motions are treated as

21  equitable civil actions. <u>United States v. Martinson</u>, 809 F.2d 1364, 1367 (9th Cir. 1987).

22

23

24         [2] Ninth Circuit cases instruct district courts to treat Rule 41(g) motions as civil
   complaints governed by the Federal Rules of Civil Procedure. <u>United States v. Ibrahim</u>,
25  522 F.3d 1003, 1007 (9th Cir. 2008) ("[b]ecause there were no criminal proceedings
   pending at the time of filing, the District Court properly treated the motion as a civil
26  complaint governed by the Federal Rules of Civil Procedure") (citation omitted); <u>United</u>
   <u>States v. Ritchie</u>, 342 F.3d 903, 906-07 (9th Cir. 2003). Once district courts treat the
27  motion "as a civil complaint, . . . it [is] required to apply the Federal Rules of Civil
   Procedure. These rules apply to each stage of the proceedings, the same way they would
28  in the civil context." <u>Ibrahim</u>, 522 F.3d at 1008 (citation omitted and emphasis in
   original).

**EXHIBIT A**
**31** 6

1    The Ninth Circuit has recognized that a district court's invocation of equitable

2  jurisdiction to hear a Fed. R. Crim. P. 41(g) request for return of property should be

3  exercised with caution and restraint.  Ramsden v. United States, 2 F.3d 322, 324 (9th

4  Cir. 1993).  It is a fundamental principle of equitable jurisdiction that if an adequate

5  remedy at law exists, equitable relief is unavailable.  United States v. Elias, 921 F.2d

6  870, 875 (9th Cir. 1990) (affirming district court's refusal to exercise equitable

7  jurisdiction "because Elias had an adequate remedy at law"); United States v. U.S.

8  Currency, $83,170.78, 851 F.2d 1231, 1235 (9th Cir. 1988) (affirming denial of motion

9  for return of property where adequate remedies at law existed; there was "no need to

10  fashion an equitable remedy").

11      C.    **Plaintiff Cannot Discharge His Burden Of Showing Equitable**

12            **(And Therefore Subject Matter) Jurisdiction Exists Because The**

13            **Commencement Of Administrative Forfeiture Proceedings Provides**

14            **Plaintiff With An Adequate Remedy At Law And Divests The Court Of**

15            **Jurisdiction To Hear This Case.**

16          1.    **The Impact Of Initiating Administrative Forfeiture Proceedings.**

17    The government has commenced administrative forfeiture proceedings as to

18  plaintiff's property, which is $250,100.00 in U.S. Currency in box number 2300.

19  Therefore, plaintiff cannot discharge his burden of showing that equitable (i.e., subject

20  matter) jurisdiction lies here.  That is because plaintiff has an adequate remedy at law - -

21  namely to pursue his claims in the administrative forfeiture proceedings, and the court is

22  therefore divested of jurisdiction to hear plaintiff's Fed. R. Crim. P. 41(g) complaint.

23    In Elias, the Ninth Circuit held that administrative forfeiture proceedings provide

24  an adequate remedy at law and therefore preclude a district court from exercising

25  equitable jurisdiction to hear a Fed. R. Crim. P. 41(g) motion for return for property.

26  There, the government had seized assets and initiated administrative forfeiture

27  proceedings by providing notice thereof.  In affirming the district court's dismissal of

28  Elias' motion, the court concluded that "Elias had a remedy at law pursuant to the

**EXHIBIT A**

**32** 7

1  administrative forfeiture scheme set forth in 19 U.S.C. § 1608." 921 F.2d at 872. The

2  court rejected the argument that only pending judicial forfeiture proceedings precluded

3  Fed. R. Crim. P. 41(g) relief, and held that administrative forfeiture proceedings

4  "provided Elias with the procedural tools to seek judicial review of the lawfulness of the

5  seizure of his property" and that "both [the administrative and judicial forfeiture]

6  procedures give the claimant an adequate remedy at law." Id. at 873.

7        Following this rule, numerous Ninth Circuit and district court cases within the

8  Ninth Circuit have dismissed Fed. R. Crim. P. 41(g) motions and complaints where

9  forfeiture proceedings are pending, reasoning that the initiation of forfeiture proceedings

10 provides an adequate remedy at law and divests courts from hearing Fed. R. Crim. P.

11 41(g) motions or complaints for the return of property. See, e.g., U.S. Currency,

12 $83,310.78, 851 F.2d at 1235 ("when a civil forfeiture proceeding is pending, there is no

13 need to fashion an equitable remedy to secure justice for the claimant"); In Re Return of

14 Seized Prop. (Jordan), 625 F. Supp. 2d 949, 955 (C.D. Cal. 2009) (in granting the

15 government's motion to dismiss a Fed. R. Crim. P. 41(g) motion for return with

16 prejudice, the court noted "the Ninth Circuit has held that a Rule 41(g) motion is

17 properly denied once a civil forfeiture action has been filed") (citation omitted); In Re

18 The Return of Seized Property, Specifically All Funds Seized from BoundlessRise, LLC,

19 2017 WL 4180149 (C.D. Cal. Aug. 30, 2017) (in granting government's motion to

20 dismiss for lack of subject matter jurisdiction, the district court noted "if a related civil

21 forfeiture proceeding is filed - - either before or after the Rule 41(g) motion was brought

22 - - the court no longer has jurisdiction to entertain the Rule 41(g) motion. A civil

23 forfeiture proceeding gives the claimant an adequate remedy at law, precluding exercise

24 of the district court's equitable powers") (internal quotes and citations omitted).

25       Cases outside the Ninth Circuit are in accord. Abernathy v. Kral, 305 F. Supp. 3d

26 795 (N.D. Ohio 2018) (where the government has begun civil forfeiture proceedings, a

27 motion for return should be denied because plaintiff has an adequate remedy at law in

28 the civil forfeiture case to challenge forfeiture and seek return of seized property); CFK,

**EXHIBIT A**
**33** 8

1  LLC v. United States, 324 F.R.D. 236 (D. Ut. 2018) (where government has begun civil

2  forfeiture proceedings, Fed. R. Crim. P. 41(g) motion should be dismissed because

3  claimant can no longer show that claimant lacked a legal remedy as required to obtain

4  equitable relief under Fed. R. Crim. P. 41(g)); Haltiwanger v. United States, 494 F.

5  Supp. 2d 927 (N.D. Ill. 2007) (granting government's motion to dismiss for lack of

6  jurisdiction because the district court lacked equitable jurisdiction to hear Fed. R. Crim.

7  P. 41(g) motion once administrative forfeiture proceedings were commenced).

8      Numerous other cases also reach the same result.  United States v. Voraveth, 2008

9  WL 4287293, *13 (D. Minn. Jul. 1, 2008), r.& r adopted, United States v. Naovalath,

10  2008 WL 2885965 (D. Minn. Jul. 22, 2008) (equitable relief under Fed. R. Crim. P.

11  41(g) is not available once administrative forfeiture proceedings commenced because

12  those proceedings provide an adequate remedy at law); $8,050.00 in U.S. Currency v.

13  United States, 307 F. Supp. 2d 922, 926-27 (N.D. Ohio 2004) (comprehensive provisions

14  in 18 U.S.C. § 983, governing the procedural aspects of civil forfeiture proceedings, give

15  claimant an adequate remedy at law for contesting a civil forfeiture; thus, once the

16  Government commences administrative forfeiture proceedings, a Rule 41(g) motion

17  must be dismissed).[3]

18      Indeed, in dismissing Fed. R. Crim. P. 41(g) actions, courts specifically hold that

19  forfeiture proceedings provide an adequate remedy at law to raise any claim, like

20  plaintiff's claim here, that the seizure violated the Fourth and Fifth Amendments.  Elias,

21  921 F.2d at 873 (administrative forfeiture proceedings "provided Elias with the

22  procedural tools to seek judicial review of the lawfulness of the seizure of his property"

23  and "an adequate remedy at law"); U.S. Currency, $83,310.78, 851 F.2d at 1235 ("when

24  a civil forfeiture proceeding has been filed, the claimant has adequate remedies to

25

26      [3] See also United States v. One 1974 Learjet, 191 F.3d 668, 673 (6th Cir. 1999)
   ("After the government initiates forfeiture proceedings and notifies a claimant of the
27  proceedings, a claimant may no longer use Rule 41(e), but instead must submit to the
   statutory procedures governing civil forfeiture proceedings") (citation omitted); Ibarra v.
28  United States, 120 F.3d 472, 475-76 (4th Cir. 1997) ("once the Government initiates
   forfeiture proceedings, the district court is divested of jurisdiction" to hear Fed. R. Crim.
   P. 41(g) motion).

**EXHIBIT A**
**34**  9

1  challenge any fourth amendment violation.  Accordingly, when a civil forfeiture

2  proceeding is pending, there is no need to fashion an equitable remedy to secure justice

3  for the claimant.  The district court did not err in denying the Rule 41(e) motion”);

4  United States v. One 1987 Jeep Wrangler, 972 F.2d 472, 479 (2d Cir. 1992) (“the

5  claimant is afforded the opportunity to test the legality of the seizure in the forfeiture

6  proceeding.  Consequently, once the administrative process has begun, the district court

7  loses subject matter jurisdiction to adjudicate the matter in a peripheral setting such as a

8  Rule 41(e) motion”) (citations omitted).

9       Multiple other cases reach the same result.  See, e.g., United States v. 2nd

10  Amendment Guns, LLC, 917 F. Supp. 2d 1120 (D. Or. 2012) (once government

11  commences administrative forfeiture proceeding, claimant has an adequate remedy at

12  law to raise claimant’s Fourth Amendment unlawful search arguments); Baranski v.

13  Fifteen Unknown Agents of ATF, 195 F. Supp. 2d 862, 868 (W.D. Ky. 2002) (district

14  court has no jurisdiction to consider Fed. R. Crim. P. 41 motion raising Fourth and Fifth

15  Amendment issues because the commencement of forfeiture proceedings provides an

16  adequate remedy at law and therefore shows that the movant cannot establish equitable

17  jurisdiction); United States v. U.S. Currency in the Amount of $146,800, 1997 WL

18  269583, *5 (E.D.N.Y. Apr. 28, 1997) (Fed. R. Crim. P. 41 motion is not an appropriate

19  vehicle for challenging the legality of a seizure because the claimant has adequate

20  remedy at law – i.e., contesting the forfeiture in the civil forfeiture case).

21       Therefore, plaintiff’s complaint should be dismissed for lack of subject matter

22  jurisdiction.  The commencement of administrative forfeiture proceedings provides an

23  adequate remedy at law and divests the Court of jurisdiction to hear plaintiff’s claims.

24       **2.   Plaintiff’s Submission Of A Claim To The FBI To Contest The**

25       **Administrative Forfeiture Does Not Change The Analysis.**

26       Plaintiff’s submission of a claim to the FBI to contest the FBI’s forfeiture of the

27  property (i.e., by the FBI rendering a final decision that actually decides that the property

28  is forfeited) does not alter the conclusion that subject matter jurisdiction does not lie.

1    Instead, the FBI's receipt of that claim merely starts the 90-day deadline set forth in 18

2    U.S.C. § 983(a)(3)(A) & (B) for the government to either release the property or file an

3    in rem civil forfeiture complaint in Court that names the property as the defendant asset.

4           As the court noted in United States v. 2nd Amendment Guns, LLC, 917 F. Supp.

5    2d 1120 (D. Or. 2012) in denying a Rule 41(g) motion because administrative forfeiture

6    proceedings had been commenced, it made no difference that claimant had submitted a

7    claim and the government had not yet filed a judicial forfeiture action, because Congress

8    has given the government 90 days pursuant to 18 U.S.C. § 983(a)(3)(A) & (B) to decide

9    how to proceed: by either filing a judicial complaint or releasing the property.  Id. at

10   1122.  Further, if a claimant asserts he has an immediate need for property, the claimant

11   still has an adequate remedy at law because he may seek immediate return of the

12   property by filing a hardship petition pursuant to 18 U.S.C. § 983(f).  2nd Amendment

13   Guns, LLC, 917 F. Supp. 2d at 1122.

14          **D.     Plaintiff Has Not Discharged His Burden Of Showing That He Should**

15                **Be Allowed To Litigate This Case Using A Pseudonym.**

16          As set forth above, dismissal is warranted because plaintiff has not shown that

17   subject matter jurisdiction exists.  The government respectfully submits that the lack of

18   subject matter jurisdiction standing alone is sufficient to warrant granting this motion.

19   Nevertheless, dismissal is also appropriate because plaintiff has not shown that he is

20   entitled to proceed with a fictitious name.

21          A plaintiff's "use of fictitious names runs afoul of the public's common law right

22   of access to judicial proceedings . . . and [Fed. R. Civ. P.] 10(a)'s command that the title

23   of every complaint include the names of all the parties." Does I thru XXIII v. Advanced

24   Textile Corp., 214 F.3d 1058, 1067 (9th Cir. 2000) (internal quotes and citation omitted).

25   The presumption is that parties "must use their real names," which "is loosely related to

26   the public's right to open courts, and the right of private individuals to confront their

27   accusers." Doe v. Kamehameha Schools/Bernice Pauahi Bishop Estate, 596 F.3d 1036,

28   1042 (9th Cir. 2010) (citations omitted).

**EXHIBIT A**

1    The Ninth Circuit has carved out an exception in the "unusual case" and in

2  "special circumstances" when non-disclosure of the plaintiff's actual name "is necessary

3  . . . to protect a person from harassment, injury, ridicule or personal embarrassment."

4  Advanced Textile Corp., 214 F.3d at 1067-68 (internal quotes and citations omitted).  To

5  invoke the exception, the "party seeking anonymity has the burden of proving it should

6  be allowed to proceed anonymously." A.G. v. Unum Life Ins. Co. of America, 2018 WL

7  903463, *1 (D. Or. Feb. 14, 2018) (citing United States v. Stoterau, 524 F.3d 988, 1013

8  (9th Cir. 2008)); cf. Advanced Textile Corp., 214 F.3d at 1071 ("plaintiffs satisfied this

9  burden").

10    In order to discharge the burden, a plaintiff must show that the "need for

11  anonymity outweighs prejudice to the opposing party and the public's interest in

12  knowing the party's identity." Id. at 1068.  As to a plaintiff's need for anonymity where,

13  as here, a plaintiff alleges he needs to shield himself from retaliation, courts consider

14  "(1) the severity of the threatened harm; (2) the reasonableness of the anonymous party's

15  fears; and (3) the anonymous party's vulnerability to such retaliation." Id. (citations

16  omitted).

17    **1.    Plaintiff's Need For Anonymity.**

18      **a.    Severity Of The Threatened Injury And Reasonableness Of**

19        **Plaintiff's Fear.**

20    The severity of the threatened harm and the reasonableness of the plaintiff's fears

21  "are intricately related and should be addressed together.  In order to proceed

22  anonymously, a plaintiff must show both (1) fear of severe harm and (2) that the fear of

23  sever harm is reasonable." Kamehameha Schools, 596 F.3d at 1043 (emphasis in

24  original).  Plaintiff has shown neither.

25    Despite bearing the burden of showing these elements in his fear-of-retaliation

26  case, plaintiff has offered no facts.  Instead, plaintiff alleges in conclusory fashion that he

27  brings his claims pseudonymously "to protect himself from the risk of unfounded

28  criminal investigation and prosecution arising from . . . injury, harassment,

1    embarrassment and retaliation based merely on the fact that he is a USPV box holder."

2    Complaint ¶ 14 (citing <u>Advanced Textile Corp.</u>, 214 F.3d at 1067-68). Plaintiff also

3    alleges, based on counsel for plaintiff in a different case's interpretation of a March 2021

4    conversation between himself and government counsel, that the government will

5    commence a criminal investigation of any box holder who identifies himself in order to

6    determine whether the box holder came by the contents of the box holder's box legally

7    (complaint ¶¶ 34-36), but the government is not criminally investigating every boxholder

8    so the complaint's allegations are not true.

9        Plaintiff avers he fears a "criminal investigation" if he identifies himself. The

10   government's investigation is merely an attempt to learn the facts. Of course the

11   government intends to vet every ownership assertion to anonymously stored valuables.

12   The FBI has already received bogus ownership assertions to boxes, and knows of

13   instances in which stolen valuables were stored there. Palmerton Decl. ¶ 4. But it is

14   nonsensical to label such investigations as "criminal" at the outset. Doubtless many law-

15   abiding citizens stored items at USPV not because USPV promised anonymity or they

16   stored criminal proceeds there, but because USPV was near their homes. The

17   government will return that property without a criminal inquiry. <u>Id.</u> at ¶¶ 3 and 5. By

18   contrast, if the facts of the investigation indicate criminality, then naturally the

19   government would investigate whatever offense was indicated. Plaintiff suggests that

20   such an investigation would be an injury. But an investigation is merely an attempt to

21   learn the truth, and attempting to do so is not an "injury" at all, let alone a severe one.

22       In fact, the Ninth Circuit has held that even the risk of physical violence may be

23   insufficient to justify proceeding under a pseudonym. In <u>Stoterau</u>, the Ninth Circuit

24   denied a convicted child sex offender's request to use a pseudonym in its published

25   opinion even though he argued that his was an unusual case in which there was a need

26   for anonymity because sex offenders such as Stoterau faced an elevated risk of violent

27   abuse in prison. The court rejected his argument, noting that it would apply equally to

28   other sex offenders, so his case was not "unusual." 524 F.3d at 1012-13. Similarly,

1    plaintiff's request for anonymity would apply equally to the other hundreds of USPV

2    boxholders or, indeed, any person who sought the return of property but worried that the

3    government would as a result investigate their assertion that they owned the property.

4          Plaintiff's complaint is also fatally flawed because he offers nothing, conclusions

5    or otherwise, to show that his alleged fear of harm is reasonable (i.e., that revealing his

6    identity will cause the government to retaliate against him).  Kamehameha Schools, 596

7    F.3d at 1044 ("fear of severe harm is irrelevant if the plaintiffs do not reasonably fear

8    severe harm") (emphasis in original).  Plaintiff's complaint does not show that he is at

9    risk of any sort of retaliatory harm as a result of filing this lawsuit.  Additionally,

10   plaintiff has offered no evidence that he (or anyone who sued in his real name) has been

11   subject to any actual threats as a result of their lawsuit.

12         In Faith Action For Community Equity v. Hawaii, 2014 WL 320587 (D. Haw. Jan.

13   29, 2014), the court denied non-English speaking plaintiffs, who failed driver license

14   tests, permission to sue using fictitious names to challenge Hawaii's policy of offering

15   driver license examinations only in English.  In so ruling, the court noted that plaintiffs'

16   allegations that they had been stopped by the police for driving without a license

17   "provide no support for the proposition that the Does risk criminal prosecution by

18   participating in this litigation" and the prior stops could be for "a traffic inspection,

19   random alcohol check, or other matters, and that, by driving without a license, the Does

20   risk prosecution for reasons wholly independent of whether they are litigants."  Id. at *4

21   (emphasis in original).

22         The same reasoning applies here.  There is no evidence that the government is

23   conducting criminal investigations because a plaintiff has sued the government.  Instead,

24   what is critical to the government's decision to conduct a criminal investigation is what

25   is in a specific box, not whether the box's owner has sued the government for the return

26   of the items within the box.

27         Plaintiff relies upon Advanced Textile Corp., but the risk of unfair retaliation was

28   clear in that case because plaintiffs had shown that laborers who complained of unfair

**EXHIBIT A**
**39** 14

1  working conditions were fired, blackballed by employers, and deported to China where

2  they faced imprisonment for failing to make good on debts they incurred to labor

3  recruiters.  No comparable evidence exists here.

4           **b.**    **Plaintiff's vulnerability to retaliation.**

5        Plaintiff is not unusually or uniquely vulnerable to retaliation.  In <u>Advanced</u>

6  <u>Textile Corp.</u>, non-resident garment workers living and working in the U.S.

7  Commonwealth of the Northern Marina Islands sued under the Fair Labor Standards Act,

8  and alleged in their complaint that they "fear that if their true identity is revealed, they

9  will face actual physical violence, the threat of physical violence, immediate deportation

10  to China or their country of origin, likely arrest upon arrival in China or their country of

11  origin . . . and economic retaliation." <u>Id.</u> at 1063.  The economic retaliation included

12  factory managers' actual threats of "termination, blacklisting, deportation, and closing

13  the factory." <u>Id.</u> at 1065.  Also, plaintiffs resided in company housing, and "at least

14  some employers attempt to prevent their employees from leaving the 'barracks' without

15  permission." <u>Id.</u> at 1072.  Plaintiffs in <u>Advanced Textile Corp.</u> were among the most

16  powerless: indebted factory workers dependent on their employers for wages and

17  housing, and who could be deported if their defendant employer chose to retaliate

18  against them, and the court permitted them to begin their litigation anonymously in part

19  because of "their highly vulnerable status." <u>Id.</u> at 1069.

20        Plaintiff here, by contrast, is the opposite: a wealthy person living in the United

21  States who has the means to hire a large law firm to do his bidding, has spent well over a

22  thousand dollars a year to store items anonymously at USPV and stored over

23  $250,000.00 in U.S. currency in his safe deposit box at USPV.  Far from a downtrodden

24  factory worker who must toil thousands of miles from his home in substandard

25  conditions, plaintiff is a member of the economically elite.  As a result, his personal

26  circumstances bear little resemblance to those of <u>Advanced Textile Corp.</u>'s vulnerable

27  plaintiffs.

28  ///

**EXHIBIT A**
**40** 15

## 2.      The Prejudice To The Government.

The government will suffer severe prejudice if plaintiff is allowed to proceed using a pseudonym.  It is simply impractical to allow this case to proceed with discovery, with the government not being able to disclose plaintiff's name to third parties such as banks who must be subpoenaed to obtain records regarding plaintiff's income.  The government is entitled to prove that plaintiff lacked sufficient legal income to support his acquisition of the seized funds.  Under the applicable aggregate of the facts test, the government is entitled to prove that the combination of facts indicating illegal activity, taken together, establish circumstantially that an asset is sufficiently linked to illegal activity (such as a drug crime) to support the asset's forfeiture.[4]  A lack of sufficient legal income is one of those factors.[5]  Also, assuming plaintiff identifies the persons who provided the seized funds to him, the government must depose those persons to verify the information.  The third parties are unlikely to maintain plaintiff's confidentiality.

The government needs to refute the specific allegations plaintiff makes in this case, in order to show plaintiff is not entitled to the return of the seized funds.

---

[4] Because the government is entitled to prove forfeitability with circumstantial evidence, the government is <u>not</u> required to trace assets to particular drug transactions. <u>United States v. 1982 Yukon Delta Houseboat</u>, 774 F.2d 1432, 1435 n.4 (9th Cir. 1985) ("[t]here is no need to tie the [defendant asset] to proceeds of a <u>particular identifiable</u> illicit drug transaction") (emphasis in original).  Courts recognize that the clandestine nature of drug activity typically makes direct evidence of the drug activity (<u>e.g.</u>, records reflecting dates and parties to drug transactions and monies paid for the drug activity) unavailable.  Accordingly, proof linking assets to illegal activity "is likely to be circumstantial, revealing unexplained wealth in conjunction with evidence of drug trafficking." <u>United States v. Daccarett</u>, 6 F.3d 37, 56 (2d Cir. 1993) (internal quotation marks and citation omitted).  Under the applicable aggregate of the facts test, the fact-finder considers all of the facts indicative of the alleged illegal activity cumulatively, with no single factor being dispositive, in deciding whether there is a sufficient nexus between assets and the alleged illegal activity to support forfeiture. <u>United States v. U.S. Currency, $42,500.00</u>, 283 F.3d 977, 980-82 (9th Cir. 2002).

[5] <u>See</u> <u>United States v. $30,670 in U.S. Funds</u>, 403 F.3d 448, 452-53, 468 (7th Cir. 2005) (affirming grant of summary judgment where claimant's income was insufficient to support funds in claimant's possession); <u>United States v. $174,206.00 in U.S. Currency</u>, 320 F.3d 658, 662 (6th Cir. 2003) (affirming summary judgment grant and stating "[c]laimants' legitimate income was insufficient to explain the large amount of currency ($174,206.00) found in their possession").

1   Furthermore, the government must file a civil forfeiture complaint within 90 days from

2   the FBI's receipt of the claim (see 18 U.S.C. § 983(a)(3)(A) & (B)), which complaint

3   must identify the persons (such as plaintiff) with an interest in the defendant property.

4           Courts have found prejudice if plaintiff's anonymity interferes with the

5   defendant's ability to address specific allegations against the defendant or is logically

6   impracticable. Advanced Textile Corp., 214 F.3d at 1072 ("[w]e recognize that at some

7   later point in the proceedings it may be necessary to reveal plaintiffs' identities to

8   defendants so that defendants may refute individualized accusations of FLSA

9   violations"); Jessica K. v. Eureka City Schools Dist., 2014 WL 689029, *5 (N.D. Cal.

10  Feb. 21, 2014) (defendants prejudiced because "the matter likely involves extensive

11  discovery directed at third parties, such as school children," and "[i]t would be most

12  impracticable to expect deponents or interviewees-such as classmates who alleged

13  harassed plaintiffs or witnessed such claimed events-to attend depositions and then keep

14  the contents of such depositions secret . . . or to keep mum about who they think is

15  accusing them"); Doe v. John F. Kennedy Univ., 2013 WL 4565061, *4 (N.D. Cal. Aug.

16  27, 2013) (granting motion to dismiss Doe complaint: "it is unclear how Defendants

17  would interview potential witnesses to gather facts or to assess Plaintiff's credibility if

18  they could not disclose her name.  Third party discovery would be similarly awkward

19  and difficult").

20          **3.      The Public's Interest.**

21          It is well-settled that the public interest is served by open and public court

22  proceedings in which the litigants' identities and claims are known to all.  Allowing a

23  party to sue under a fictitious name obstructs "the common law rights of access to the

24  courts and judicial records." Kamehameha Schools, 596 F.3d at 1042; see also

25  Advanced Textile Corp., 214 F.3d at 1067 ("[p]laintiffs' use of fictitious names runs

26  afoul of the public's common law right of access to judicial proceedings") (citations

27  omitted); Stoterau, 524 F.3d at 1018 ("[i]dentifying the parties to a proceeding is an

28  ///

**EXHIBIT A**
**42**17

1  important dimension of publicness.  The people have a right to know who is using their

2  courts") (internal quotes and citation omitted).

3         This case is a matter of public interest.  Articles have appeared in newspapers

4  regarding this case, and permission to intervene in Coe's case for the purpose of filing an

5  amicus curiae brief because of the purported importance of this case was sought but was

6  denied.  Docket Nos. 29 and 39 in <u>Coe</u> case (2:21-cv-03019).

7                                         **IV.**

8                                    **CONCLUSION**

9         For the foregoing reasons, the government respectfully requests that its motion be

10  granted.

11  Dated: July 2, 2021                    Respectfully submitted,

12                                          TRACY L. WILKISON
                                            Acting United States Attorney
13                                          SCOTT M. GARRINGER
                                            Assistant United States Attorney
14                                          Chief, Criminal Division

15                                              /s/
                                            _____
16                                          ANDREW BROWN
                                            VICTOR A. RODGERS
17                                          MAXWELL COLL
                                            Assistant United States Attorneys

18                                          Attorneys for Defendants
19                                          UNITED STATES OF AMERICA, et al.

20

21

22

23

24

25

26

27

28

                                    **EXHIBIT A**
                                       **43** 18