# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-04405-RGK-MAR | | Date | July 23, 2021 |
|---|---|---|---|---|
| Title | *Paul Snitko et al v. United States of America et al* | | | |

| Present: The Honorable | R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Sharon L. Williams | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

**Proceedings:** (IN CHAMBERS) Order Re: Plaintiffs' Motion for Preliminary Injunction [DE 26]

## I. INTRODUCTION

Paul Snitko, Jennifer Snitko, Joseph Ruiz and Tyler Gothier ("Plaintiffs") filed a first amended complaint, ("FAC") (ECF No. 33), against the United States of America, acting United States Attorney Tracy L. Wilkison, and assistant Director of the FBI Kristi Koons Johnson (collectively, "the Government"). Plaintiffs allege claims for Return of Property under Federal Rule of Criminal Procedure Rule 41(g) and for violation of their rights under the Fourth and Fifth Amendments to the Constitution.

Plaintiffs' claims arise from the Government's seizure and search of Plaintiffs' personal property located in safe deposit boxes on the premises of non-party United States Private Vaults. Plaintiffs seek to represent a class of "[a]ll renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; and (b) have identified themselves to the FBI since the seizure." (FAC ¶ 14).

On June 3, 2021, Plaintiffs filed the instant Motion for Preliminary Injunction, ("Motion"), whereby Plaintiffs ask the Court to order the Government "to provide notice to all individuals who have come forward in their own names to file claims for the contents of their USPV boxes for the basis for the ongoing seizure of their property and . . . direct the government to release the property to the extent that it is unable to satisfy the requirement to articulate such a basis." (Motion at 22–23). On June 28, 2021, Plaintiffs conceded that "Paul and Jennifer Snitko have now recovered their property [] and Tyler Gothier is scheduling his property's return[.]" (Reply in Support of Pls.' Mot. for Preliminary Injunction at 4, ECF No. 54). Plaintiffs' Motion is therefore **DENIED** as moot with respect to the individual relief sought by the Snitkos and Gothier.

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion as it pertains to Joseph Ruiz ("Ruiz").

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-04405-RGK-MAR | Date | July 23, 2021 |
|---|---|---|---|
| Title | *Paul Snitko et al v. United States of America et al* | | |

## II. FACTUAL BACKGROUND

United States Private Vaults ("USPV") is a California corporation that operates a safe-deposit-box facility in Beverly Hills. USPV's Beverly Hills facility houses over 800 safe deposit boxes.

Ruiz rented safe deposit box number 7622 ("Box 7622") from USPV, in which he placed approximately $57,000 in cash.

On March 22, 2021, the FBI raided USPV and seized the contents of all the safe deposit boxes there, including Box 7622. On April 8, 2021, Ruiz filed a claim with the FBI to retrieve his seized property. (Declaration of Joseph Ruiz ("Ruiz Decl."), ECF No. 26-6). The FBI's only response to Ruiz was an email stating that the agency would contact him in 30–60 days. The Government, however, has not returned Ruiz's property, but has instead indicated that it is seeking to forfeit the property.

Specifically, the Government has notified lawyers for USPV that it intends to forfeit the property of many USPV box-holders, including Ruiz's. Although some boxholders have received an individual notice from the Government of the Government's intent to forfeit property, Ruiz has not.

In the declaration filed in support of his Motion, Ruiz stated the following under penalty of perjury:

> I desperately need to have my money returned to me. I am currently unemployed, and I had been living off the funds in my USPV box prior to the seizure. The loss of access to my money means I do not have money that I need to pay for food and medical care.
>
> I am suffering from serious medical issues, as a result of a back injury that I suffered at a former job, and I also recently had a finger amputated after I suffered a bad fall. Without access to my money, I cannot pay for needed medical care including physical therapy for my back and finger.
>
> In addition, without access to my money I cannot pay for food. As a result, I am currently living off canned foods and other provisions that I stockpiled at the beginning of the pandemic.

(Ruiz Decl., ¶¶ 11–13).

On May 20, 2021, the FBI initiated an administrative forfeiture proceeding by issuing a "Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings" and an attached list of assets seized from USPV's premises that the Government seeks to forfeit, (together, "the FBI Notice").

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-04405-RGK-MAR | Date | July 23, 2021 |
|---|---|---|---|
| Title | *Paul Snitko et al v. United States of America et al* | | |

The FBI Notice states that the Government is seeking to forfeit the $57,000 in cash seized from Ruiz's safe deposit box.

On June 22, 2021, the Court granted in part Ruiz's Application for a Temporary Restraining Order ("TRO"). (TRO, ECF No. 52). The TRO enjoined the Government "from civilly forfeiting the property of . . . Joseph Ruiz without first sending [a] forfeiture notice[] that identif[ies] the specific factual and legal basis for the Government's determination to commence civil forfeiture proceedings." (*Id.* at 7). By separate order issued on July 16, 2021, (ECF no. 58), the Court converted the TRO into a preliminary injunction.

### III.  JUDICIAL STANDARD

The purpose of a preliminary injunction is generally to preserve the status quo pending a judgment on the merits. *Regents of Univ. of California v. Am. Broad. Companies, Inc.*, 747 F.2d 511, 514 (9th Cir. 1984). To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "When the government is a party, the last two factors (equities and public interest) merge." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021) (citation omitted). The court may also apply a sliding scale test, whereby the elements of the *Winter* test are balanced "so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

Where, as here, the moving party seeks a preliminary injunction that "orders a responsible party to take action[,]" *i.e.* a "mandatory injunction," the "court should deny such relief unless the facts and law clearly favor the moving party." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

### IV.  DISCUSSION

#### A.  Ruiz' Motion for a Preliminary Injunction

Ruiz argues that he is entitled to a preliminary injunction based on his likelihood of success on the merits of both his Fifth Amendment Due Process claim, and Fourth Amendment claim for unlawful seizure of his property. Because the Court determines that the facts and the law clearly favor Ruiz as to his Fourth Amendment claim, the Court need not address Ruiz's argument as to the Fifth Amendment.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-04405-RGK-MAR | Date | July 23, 2021 |
|---|---|---|---|
| Title | *Paul Snitko et al v. United States of America et al* | | |

The facts of this case raise two questions of constitutional import: first, "Why does the Government have Ruiz's $57,000?"; and second, "Why won't the Government give it back?"

As to the first question, Ruiz does not challenge the constitutionality of the Government's initial March 22, 2021 seizure of his property at this juncture. But some background on the first question helps frame the constitutional issues at play in the second.

The Government's answer to "Why does the Government have Ruiz's $57,000?" is as follows:

A grand jury indicted USPV for conspiring with its customers to launder money, distribute drugs, and structure financial transactions to avoid currency reporting requirements. The government obtained a criminal seizure warrant for "[t]he nests of safety deposit boxes and keys" at USPV which provides that it "does not authorize a criminal search or seizure of the contents of the safety boxes[,]" that "agents shall follow their written inventory policies to protect their agencies and the contents of the boxes" and that "agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property[.]" The inventory of the boxes' contents revealed firearms, illegal drugs, and anonymous stores of wealth, mostly cash.

(Defs.' Opp. to Pls.' Mot. for Preliminary Injunction at 2–3, ECF No. 51). Ruiz's Box 7622 was in one of the nests described in the warrant to search USPV's premises. Though the Court makes no ruling as to the constitutionality of the Government's March 22, 2021 search and seizure, the Government's story makes good practical sense. Assuming that the Government was authorized to seize the nests of safety deposit boxes at USPV, then, by necessity, the Government was authorized to seize Ruiz's nest egg which was locked up in Box 7622.

As to the second and more pressing question, the Government's answer falls flat. The Government asserts that after a boxholder submits a claim to the FBI for return of property, as Ruiz did, and "[a]fter verifying the identity of the boxholder, it can nonetheless be difficult and time consuming to return to that person the contents." (Defs.' Opp. to Pls.' Mot. for Preliminary Injunction at 5).

To return valuables, two special agents (per FBI policy for handling valuables) have to visit a secure valuables facility, in addition to at least one agent visiting the general storage facility, before meeting with the person to complete the return. [] The process also generates substantial paperwork. [] Scheduling the returns has also proven difficult. [] Many times agents have called to schedule a return, but have gotten no response. [] Other times, persons have scheduled returns, but then cancelled just before their appointment, shown up late, or simply failed to show up for their appointment at all.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-04405-RGK-MAR | Date | July 23, 2021 |
|---|---|---|---|
| Title | *Paul Snitko et al v. United States of America et al* | | |

(*Id.* at 5–6). The Government goes on at length as to the general difficulties in returning peoples' property to them, but the upshot of the Government's argument is that returning property to hundreds of people is a slow bureaucratic process.

As to the justification for continuing to seize the $57,000 found in Box 7622, the Government's answer falls flatter still. The Government asserts, without further explanation, that it is keeping Ruiz's $57,000 because "the cash is the subject of [] pending in rem administrative forfeiture proceedings." (*Id.* at 5).

But why? The FBI Notice sheds little light on the issue. The Notice states:

> **Forfeiture Authority**: The forfeiture of this property has been initiated pursuant to 18 USC 981(a)(1)(C) [sic] and the following additional federal laws: 19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983 and 28 C.F.R Parts 8 and 9.

(Declaration of Robert E. Johnson ("Johnson Decl."), Ex. G at 5 of 20, ECF No. 44-8). This list of purported statutory bases for forfeiture is vague at best. Title 18 U.S.C. § 981(a)(1)(C) lists thirty-five sections of the United States Code. A violation of any one of these code provisions can provide a basis for forfeiture. 18 U.S.C. § 981(a)(1)(C). These include code sections outlawing influencing a loan officer, forgery, counterfeiting, uttering counterfeit obligations, smuggling, loan fraud, computer fraud, and bank fraud, among others.[1]

What the FBI Notice does not contain is any specific factual or legal justification for the Government's retention of the $57,000 that Ruiz asserts is his. Nor does the Government offer any justification for its continued retention of the $57,000 other than that "the cash is the subject of the pending in rem administrative forfeiture proceedings." It has been 123 days and counting since the Government seized Box 7622. Whether the Government's initial seizure of Box 7622 on March 22, 2021 violated Ruiz's constitutional rights is a question for another day. Whether the Government is justified in its continued seizure of the cash is the question at the heart of Ruiz's Motion.

The Court now addresses this question through the frame of the preliminary injunction factors enumerated in *Winter*. As discussed below, the Court finds that the facts and the law clearly favor Ruiz as to his Fourth Amendment claim.

---

[1] In the TRO, (ECF No. 52), and subsequent preliminary injunction issued by separate order, (ECF No. 58), the Court found that this vague and generic notice raised significant Due Process issues.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-04405-RGK-MAR | Date | July 23, 2021 |
|---|---|---|---|
| Title | *Paul Snitko et al v. United States of America et al* | | |

1. *Ruiz Has Demonstrated a Likelihood of Success on the Merits*

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV. "The Fourth Amendment doesn't become irrelevant once an initial seizure has run its course." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017). Rather, the Fourth Amendment is implicated by the Government's delay in returning seized property, irrespective of the Government's initial basis for seizing the property. *Id.* "A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification." *Id.*

Assuming that the Government's initial seizure of Box 7622 was justified by probable cause and conducted pursuant to a valid warrant, the Government has nonetheless failed to provide any justification for its continued seizure of the property. Why has the Government kept the $57,000 now that Ruiz has come forward and sworn under penalty of perjury that it is his? The Government doesn't really say. Instead, the Government states that it continues to seize Ruiz's property because "the cash is the subject of . . . pending in rem administrative forfeiture proceedings." This explanation is not a justification. Merely stating that the Government has initiated forfeiture proceedings against the property does not offer any insight into how the Government's continued retention of the $57,000 complies with the dictates of the Fourth Amendment.

2. *Ruiz Has Demonstrated a Likelihood of Irreparable Harm*

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Government seized Box 7622 on March 22, 2021 and Ruiz filed a claim with the FBI to retrieve his seized property on April 8, 2021. To date, 106 days after Ruiz asked the FBI for his property back, the Government has neither returned the $57,000 nor provided an adequate justification for the prolonged seizure. Ruiz will therefore likely continue to suffer injury to his Fourth Amendment rights for the foreseeable future if an injunction does not issue.

Equally troubling is the fact that Ruiz "desperately need[s] to have [his] money returned" because he is "currently unemployed, and [] had been living off the funds in [his] USPV box prior to the seizure." Ruiz testifies that he needs the money because he "cannot pay for food" and is "currently

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-04405-RGK-MAR | Date | July 23, 2021 |
|---|---|---|---|
| Title | *Paul Snitko et al v. United States of America et al* | | |

living off canned foods and other provisions that [he] stockpiled at the beginning of the pandemic." He further testifies that without the $57,000, Ruiz "cannot pay for needed medical care including physical therapy for [his] back and finger."

Ruiz needs the money to pay for medical care and food. The Government does not challenge this testimony, or even address it. Ruiz has therefore established that without a preliminary injunction requiring the Government to return the property, he is likely to suffer irreparable harm via his inability to pay for food and needed medical treatment for an indeterminate period of time.

### 3. *Ruiz Has Established that the Balance of Equities Favors Injunctive Relief, and an Injunction Would Be in the Public Interest*

When, as here, the Government is a party to a suit, the last two factors of the *Winter* test "(equities and public interest) merge." *E. Bay Sanctuary Covenant*, 993 F.3d at 668.

The issuance of a preliminary injunction would be in the public interest because "it is always in the public interest to prevent the violation of a party's constitutional rights." *See Melendres*, 695 F.3d at 1002. Moreover, the Government raises no argument to the contrary.

Accordingly, Ruiz has satisfied all requirements for the issuance of a preliminary injunction. Moreover, because the Government offers no justification for its continued seizure of the contents of Ruiz's box, and because Ruiz has established a strong likelihood of irreparable harm to his Fourth Amendment rights and ability to obtain food and medical care, the Court finds that "the facts and law clearly favor [Ruiz]." *See Garcia*, 786 F.3d at 740.

### B. Scope of the Preliminary Injunction

Plaintiffs urge the Court to "issue a preliminary injunction directing the government to provide notice to all individuals who have come forward in their own names to file claims for the contents of their USPV boxes for the basis for the ongoing seizure of their property[,] and . . . direct the government to release the property to the extent that it is unable to satisfy the requirement to articulate such a basis." (Motion at 22–23). The Court declines to issue a preliminary injunction pertaining to the rights of USPV boxholders that did not move for a preliminary injunction. *See California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018) (holding that the scope of an injunctive "remedy must be no broader and no narrower than necessary to redress the injury shown by the [moving party].").

In the alternative, Plaintiffs request that the Court provisionally certify a class of:

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-04405-RGK-MAR | Date | July 23, 2021 |
|---|---|---|---|
| Title | *Paul Snitko et al v. United States of America et al* | | |

All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; (b) have identified themselves to the FBI since the seizure; (c) have not been notified that their safe deposit boxes are the subject of a currently ongoing administrative or judicial forfeiture proceeding; and (d) whose property is still in the possession of the federal government.

(Motion at 17–18). The Court declines to do so because Plaintiffs have failed to satisfy the requirements of Rule 23, including Rule 23(a)(1)'s numerosity requirement. *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members."). Here, Plaintiffs make no showing as to the numerosity of the putative class.

Accordingly, the preliminary injunction described below applies to Ruiz alone:

- Within seven days of this Order, the Government shall return the contents of Box 7622 to Ruiz (provided that Ruiz is able to produce the key to Box 7622), or;
- In the alternative, within seven days of this Order, the Government must (1) send a notice letter to Ruiz and his counsel of record informing them of the Government's asserted legal basis for the ongoing seizure of the contents of Box 7622, and (2) show cause to the Court in writing as to why the Government continues to seize the contents of Box 7622.
- If the Government fails to return the property in seven days and is unable to articulate an adequate justification for the ongoing seizure of the contents of Box 7622, separate from the justification for the initial seizure warrant, the Court will amend this Order to require the Government to return the contents of Box 7622 to Ruiz without delay, provided that Ruiz is able to produce the key to Box 7622.
- Plaintiffs shall serve a copy of this Order on all Defendants within one day of its issuance.

## V. CONCLUSION

In accordance with the foregoing, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion for a preliminary injunction.

**IT IS SO ORDERED.**

:  _____

Initials of Preparer  _____