# EXHIBIT

# "D"

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-03019-RGK-MAR | | Date | July 23, 2021 |
|---|---|---|---|---|
| Title | *Charles Coe v. United States of America et al* | | | |

Present: The Honorable  R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiff:            Attorneys Present for Defendant:

Not Present                             Not Present

Proceedings:        (IN CHAMBERS) Order Re: Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) [DE 33]

### I.    INTRODUCTION

On April 7, 2021, an individual proceeding under the fictitious name Charles Coe ("Plaintiff")[1] filed a complaint against (1) the United States of America, (2) Tracy L. Wilkinson in her official capacity as Acting United States Attorney for the Central District of California, and (3) Kristi Koons Johnson in her official capacity as the Assistant Director in Charge of the Los Angeles Field Office of the FBI (collectively, "Defendants," or "the Government"). Plaintiff asserts claims for Return of Property pursuant to Rule 41(g) of the Federal Rules of Criminal Procedure ("Rule 41(g)"), and for violation of Plaintiff's rights under the Fourth and Fifth Amendments of the Constitution.

Plaintiff's claims arise from the Government's allegedly unlawful seizure and search of Plaintiff's personal property which was located in safe deposit box number 904 on the premises of non-party United States Private Vaults.

Presently before the Court is Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction and Failure to State a Claim Upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). ("Motion") (ECF No. 33). For the reasons that follow, the Court **DENIES** Defendants' Motion.

---

[1]     Plaintiff filed this lawsuit under a fictious name, and makes no representations about Plaintiff's gender, to protect herself or himself from the risk of criminal prosecution, harassment, retaliation, and embarrassment. (Complaint ¶ 5, ECF No. 1).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-03019-RGK-MAR | | Date | July 23, 2021 |
|---|---|---|---|---|
| Title | *Charles Coe v. United States of America et al* | | | |

## II.   FACTUAL BACKGROUND

Unless otherwise noted, the following factual background is drawn from Plaintiff's complaint:

Non-party United States Private Vaults ("USPV") offers its customers a unique service. The company, located at a strip mall in Beverly Hills, California, rents safe deposit boxes. But USPV's offerings, designed to provide customers with increased privacy and security, differ from those available at a typical bank in several material ways. First, USPV identifies its customers through encrypted biometric information—an iris scan—and does not use other personal identifying information related to its customers. Second, USPV does not keep keys to its customers' boxes. Customers maintain all keys to their boxes and can access the vault containing their boxes only through an iris scan or biometric hand geometry scan. Third, USPV offers 24/7 monitoring by the ADT security company as well as onsite motion detectors, heat sensors, and other sophisticated security measures to detect the presence of intruders after regular business hours. Finally, USPV offers insurance for each safe deposit box up to $500,000 per box.

USPV has between 600 and 1000 safe deposit boxes which it rents to hundreds of different customers. Plaintiff rented box number 904 where Plaintiff kept property—namely, currency.

USPV's business model attracted the Government's attention. A grand jury indicted USPV for conspiring with its customers to launder money, distribute drugs, and structure financial transactions to avoid currency reporting requirements. (Motion at 3). From March 22, 2021 through March 26, 2021, federal law enforcement agents acting at the direction of the United States Attorney's Office ("USAO") for the Central District of California conducted a search of USPV and seized every safe deposit box contained in the facility, including box number 904.

On March 24, 2021, counsel for Plaintiff requested a copy of the warrant authorizing the search and seizure operations at USPV and the return of Plaintiff's property. But the Assistant U.S. Attorney in charge of the investigation refused to provide a copy of the warrant unless counsel disclosed Plaintiff's name, which was unknown to USPV and the Government.

Plaintiff alleges on information and belief that the Government intends to refuse the return of property to any USPV box holder who refuses to waive his or her Fifth Amendment right against self-incrimination. Specifically, Plaintiff alleges that the Government intends to subject every box holder that comes forward to claim his or her property to a criminal investigation. Only if Plaintiff (and other box owners) can convince the USAO that they legally obtained their property will the Government return it to them. Thus, for Plaintiff to vindicate his or her Fourth Amendment right to be free from unreasonable searches and seizures, Plaintiff must forego his or her Fifth Amendment right against self-incrimination.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-03019-RGK-MAR | Date | July 23, 2021 |
| Title | *Charles Coe v. United States of America et al* | | |

Since March 26, 2021, USPV's Beverly Hills storefront has been closed. Affixed to the door is a sign that bears the seal of the FBI and states: "Please go to the following link to initiate a claim for your US Private Vaults box: **forms.fbi.gov/uspvclaims**[.]" (Compl. ¶ 17). The website, in turn, states: "To make a claim for property stored at U.S. Private Vaults in Beverly Hills, California, please provide the following information. An FBI agent will contact you for additional details." Below this statement is a form that requires a claimant to provide his or her first name, middle name, last name, and "best contact number." (*Id.* ¶ 18).

To date, Plaintiff's property remains in the Government's possession. Though Plaintiff's property is not contraband, Plaintiff has no possible method to recover the property seized by the Government unless Plaintiff subjects herself or himself to criminal investigation by identifying herself or himself to the Government.

## III.   JUDICIAL STANDARD

### A.   12(b)(1): Dismissal for Lack of Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction and are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1225 (9th Cir. 1989). A party may move to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of establishing jurisdiction. *Kingman Reef Atoll Investments, L.L.C. v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

### B.   Dismissal for Failure to State a Claim Upon Which Relief Can be Granted

Under Rule 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the plaintiff alleges enough facts to draw a reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678. A plaintiff need not provide detailed factual allegations, but must provide more than mere legal conclusions. *Twombly*, 550 U.S. at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a Rule 12(b)(6) motion, the Court must accept well-pled factual allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *See Autotel v. Nev. Bell. Tel. Co.*, 697 F.3d 846, 850 (9th Cir. 2012). Dismissal "is appropriate only where the

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-03019-RGK-MAR | Date | July 23, 2021 |
| Title | *Charles Coe v. United States of America et al* | | |

complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

## IV.    DISCUSSION

The Government moves to dismiss Plaintiff's Complaint on two grounds. First, the Government argues that the Court lacks subject matter jurisdiction. Second, the Government argues that Plaintiff fails to state a claim upon which relief can be granted because Plaintiff is proceeding under a pseudonym. For the reasons that follow, the Court finds neither argument persuasive.

### A.    Subject Matter Jurisdiction

The Government argues that the Court must dismiss this action for lack of subject matter jurisdiction because Plaintiff cannot establish that the Court has equitable jurisdiction over Plaintiff's claim for return of property under Rule 41(g). This argument ignores the fact that Plaintiff asserts a claim for violations of the Fourth and Fifth Amendment, over which it appears the Court has federal question jurisdiction pursuant to 18 U.S.C. § 1331. Because the Government does not challenge this Court's exercise of federal question jurisdiction over Plaintiff's Fourth and Fifth Amendment claim, the Government's Motion is denied as to that claim.

As for Plaintiff's Rule 41(g) claim, the Government argues that the Court lacks equitable jurisdiction because Plaintiff has an adequate remedy at law. The Government cites Ninth Circuit law for the proposition that courts should deny Rule 41(g) motions, which are equitable in nature, when an adequate remedy at law exists. *See United States v. Elias*, 921 F.2d 870, 871, 875 (9th Cir. 1990) (affirming district court's denial of Rule 41 motion for return of property where property owner had an adequate remedy at law). Here, however, the Government's argument is premature. The Court has yet to consider Plaintiff's pending motion for return of property, (ECF No. 25), which more fully briefs the jurisdictional issue. The Court therefore declines to consider whether the Court has jurisdiction "to fashion an equitable remedy to secure justice for [Plaintiff],"[2] at this juncture, and will do so as necessary in resolving Plaintiff's motion for return of property.

### B.    Whether Plaintiff Has Stated A Claim

The Federal Rules of Civil Procedure establish a system of notice pleading. To advance past the pleading stage, notice pleading requires a complaint to put the defendant on notice of the plaintiff's

---

[2]    *See United States v. U.S. Currency $83,310.78*, 851 F.2d 1231, 1235 (9th Cir. 1988).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-03019-RGK-MAR | | Date | July 23, 2021 |
|---|---|---|---|---|
| Title | *Charles Coe v. United States of America et al* | | | |

claims. To that end, "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" *Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Here, Plaintiff alleges that Plaintiff rented box number 904 at USPV, that the Government seized the contents of that box, and that the Government continues to seize the property in violation of Plaintiff's constitutional rights. These allegations are sufficient to put the Government on notice and to state plausible claims for violation of the Fourth and Fifth Amendment and for return of property.

## C. Whether Plaintiff May Proceed Under a Pseudonym

Plaintiff's name is not Charles Coe—Plaintiff sued under that pseudonym to protect herself or himself from the risk of criminal prosecution, harassment, retaliation, and embarrassment.

The Government moves to dismiss Plaintiff's Complaint under Rule 12(b)(6) on the grounds that Plaintiff should not be allowed to proceed with this case anonymously. For the reasons that follow, the Court disagrees.

At common law, the public generally had a right of access to judicial proceedings. *See Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000). Thus, plaintiffs generally must proceed in a lawsuit under the plaintiff's own name. *Id.; see also* Fed. R. Civ. P 10(a) ("The title of the complaint must name all the parties[.]"). The Ninth Circuit has carved out an exception to this rule, however, and allows "parties to proceed anonymously when special circumstances justify secrecy." *Does I thru XXIII*, 214 F.3d at 1067. Under this exception, "a party may preserve his or her anonymity in judicial proceedings . . . when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity." *Id.* at 1068.

In cases where, as here, the plaintiff sues anonymously to shield herself or himself from retaliation, courts determine the need for anonymity by evaluating the following factors: "(1) the severity of the threatened harm, . . . (2) the reasonableness of the anonymous party's fears. . . ; and (3) the anonymous party's vulnerability to such retaliation . . . ." *Id.* "The court must also determine the precise prejudice at each stage of the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice." *Id.* "Finally, the court must decide whether the public's interest in the case would be best served by requiring that the litigants reveal their identities." *Id.*

The Court considers these factors in turn.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | | |
|---|---|---|---|---|
| Case No. | 2:21-cv-03019-RGK-MAR | | Date | July 23, 2021 |
| Title | *Charles Coe v. United States of America et al* | | | |

### 1.   *Severity of the Threatened Injury*

First, the threatened harm to Plaintiff is severe. Plaintiff alleges that the contents of box 904 were non-contraband, that the Government seized the contents of box 904 without particularized probable cause, and that the Government continues to hold Plaintiff's property without justification. Assuming these allegations are true, requiring Plaintiff to reveal Plaintiff's identity to the Government for no good reason would be an unjustified invasion of Plaintiff's right to be free from unreasonable seizures and from self-incrimination.

The Government does not deny that it wants Plaintiff's name so that it may investigate Plaintiff. But not to worry, the Government says, "an investigation is merely an attempt to learn the truth, and attempting to do so is not an 'injury' at all, let alone a severe one." (Motion at 17). This argument is specious. The Government wields the awesome power to seize property from private citizens when the Government has probable cause to believe the property is contraband. But the Government is not authorized to compel a private citizen whose property the Government has indiscriminately seized to come forth and self-identify so that the Government may investigate that person.

### 2.   *Reasonableness of Plaintiff's Fear*

Second, Plaintiff's fear that the Government will subject Plaintiff to an investigation if Plaintiff is not allowed to proceed under a pseudonym is not only reasonable but confirmed by the Government's own briefing. (*See generally*, Motion).

### 3.   *Plaintiff's Vulnerability to Retaliation*

Third, Plaintiff is vulnerable to retaliation from the Government in the form of a criminal investigation. As noted under the first and second factors above, the Government concedes that it wants to learn Plaintiff's name so that the Government may initiate an investigation against Plaintiff.

The Government argues that Plaintiff is not vulnerable to the threatened harm because Plaintiff is "a wealthy person living in the United States who has the means to hire a large law firm to do his bidding and spend well over a thousand dollars a year to store items anonymously at USPV." (Motion at 20). This argument is misguided. Though Plaintiff may indeed be "a wealthy person," Plaintiff is also a "person living in the United States," and is therefore afforded the protections of the United States Constitution. To require Plaintiff to self-identify in this lawsuit would require Plaintiff to forfeit the Fifth Amendment right to not incriminate one's self. Whether Plaintiff is wealthy or poor, a criminal or a model-citizen, to require Plaintiff to self-identify would leave Plaintiff vulnerable to the investigatory powers of the federal government.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-03019-RGK-MAR | Date | July 23, 2021 |
|----------|------------------------|------|---------------|

| Title | *Charles Coe v. United States of America et al* |
|-------|--------------------------------------------------|

### 4.  *Prejudice to the Government*

Under the fourth factor, the Court must consider "the precise prejudice at each stage of the proceedings to the opposing party, and whether proceedings may be structured so as to mitigate that prejudice." *Does I thru XXIII*, 214 F.3d at 1067.

Here, the Government asserts that it is prejudiced by Plaintiff's anonymous prosecution of this case because the Government needs to confirm that Plaintiff is the boxholder of box number 904, "which is especially troublesome given USPV's anonymous business model." (Motion at 14). The Government further asserts that "[i]t would be reckless for the government to resolve a case by agreeing to return property to an anonymous plaintiff because the government has no way of knowing whether he actually has a property interest in anything; the true owner could show up later." (*Id.*)

The Court recognizes the difficulty that the Government faces in ensuring that it returns the items that it seized to the items' rightful owners. But these proceedings may be structured so as to mitigate any prejudice that this difficulty may pose. As the Government notes, USPV did not maintain the names of its box owners. It is therefore unclear how learning Plaintiff's true name would help the Government establish whether Plaintiff is in fact the lawful owner of the property seized from box number 904. Though the Court cannot predict how this case will ultimately resolve at the pleading stage, the Court is satisfied that the Government's concerns can be mitigated. For example, Plaintiff proposes to establish ownership of box number 904 by matching Plaintiff's key to the box. Alternatively, or additionally, Plaintiff could confirm her or his identity via iris scan or biometric hand geometry scan, using the scanners that the Government seized from USPV and maintains in its possession.

The Government also asserts that it needs "to determine whether [P]laintiff lawfully possessed the items" seized from box number 904. (*See* Motion at 15). If the Government believes that Plaintiff did not lawfully possess the contents of box number 904, the Government can, of course, defend this suit on that basis. But the Government has made no showing that Plaintiff possessed the items seized from box number 904 unlawfully. Because the Government has not come forth with anything more than pure conjecture that Plaintiff *might* have unlawfully possessed the items seized from box number 904, the Court finds that Plaintiff's interest in anonymity outweighs any prejudice to the Government.

### 5.  *The Public Interest*

Under the fifth factor, the Court considers "whether the public's interest in the case would be best served by requiring that the litigants reveal their identities." *Does I thru XXIII*, 214 F.3d at 1067.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-03019-RGK-MAR | Date | July 23, 2021 |
|---|---|---|---|
| Title | *Charles Coe v. United States of America et al* | | |

The public interest in having parties use their real names "is loosely related to [(1)] the public's right to open courts, . . . and [(2)] the right of private individuals to confront their accusers[.]" *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 596 F.3d 1036, 1042 (9th Cir. 2010). As to the first right, the Ninth Circuit has recognized that there is a "'public interest in understanding the judicial process' [which] has supported [the] 'general history of access[]'" to court proceedings. *Id.* at 1044. The second right is not at issue here because neither of the individual Defendants are sued in their private, individual capacity.

While the public has an interest in open court proceedings, the public also has an interest in "be[ing] secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]" U.S. Const. amend. IV. And an interest in the right of private citizens to avoid self-incrimination. U.S. Const. amend. V. The Government is alleged to have seized Plaintiff's property without individualized probable cause. The Government has made no showing that there is anything illicit about the property it seized from box number 904. To get the property back, the Government wants to require Plaintiff to identify herself or himself. After Plaintiff self-identifies, the Government concedes that it will open an investigation into Plaintiff. The Government's conduct in connection with the March 22, 2021 seizure and subsequent conduct in this litigation raise serious Fourth and Fifth Amendment issues that are of interest to the public. At this juncture, the Court finds that the interest in having litigants use their true names in court does not outweigh the interest in these Fourth and Fifth Amendment issues.

In summary, at this time, Plaintiff's asserted need for anonymity outweighs any prejudice to the Government and the public's interest in knowing Plaintiff's identity. The Court therefore denies the Government's motion to dismiss the Complaint for Plaintiff's use of a pseudonym.

## V.    CONCLUSION

For the foregoing reasons, the Court **DENIES** the Government's Motion.

**IT IS SO ORDERED.**

Initials of Preparer                    _____ : _____

_____

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-04405-RGK-MAR | | Date | July 23, 2021 |
|---|---|---|---|---|
| Title | *Paul Snitko et al v. United States of America et al* | | | |

Present: The Honorable   R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not Present |

Proceedings:        **(IN CHAMBERS) Order Re: Plaintiffs' Motion for Preliminary Injunction [DE 26]**

## I.   INTRODUCTION

Paul Snitko, Jennifer Snitko, Joseph Ruiz and Tyler Gothier ("Plaintiffs") filed a first amended complaint, ("FAC") ("ECF No. 33), against the United States of America, acting United States Attorney Tracy L. Wilkison, and assistant Director of the FBI Kristi Koons Johnson (collectively, "the Government"). Plaintiffs allege claims for Return of Property under Federal Rule of Criminal Procedure Rule 41(g) and for violation of their rights under the Fourth and Fifth Amendments to the Constitution.

Plaintiffs' claims arise from the Government's seizure and search of Plaintiffs' personal property located in safe deposit boxes on the premises of non-party United States Private Vaults. Plaintiffs seek to represent a class of "[a]ll renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; and (b) have identified themselves to the FBI since the seizure." (FAC ¶ 14).

On June 3, 2021, Plaintiffs filed the instant Motion for Preliminary Injunction, ("Motion"), whereby Plaintiffs ask the Court to order the Government "to provide notice to all individuals who have come forward in their own names to file claims for the contents of their USPV boxes for the basis for the ongoing seizure of their property and . . . direct the government to release the property to the extent that it is unable to satisfy the requirement to articulate such a basis." (Motion at 22–23). On June 28, 2021, Plaintiffs conceded that "Paul and Jennifer Snitko have now recovered their property [] and Tyler Gothier is scheduling his property's return[.]" (Reply in Support of Pls.' Mot. for Preliminary Injunction at 4, ECF No. 54). Plaintiffs' Motion is therefore **DENIED** as moot with respect to the individual relief sought by the Snitkos and Gothier.

For the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion as it pertains to Joseph Ruiz ("Ruiz").

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-04405-RGK-MAR | | Date | July 23, 2021 |
|---|---|---|---|---|
| Title | *Paul Snitko et al v. United States of America et al* | | | |

## II.   FACTUAL BACKGROUND

United States Private Vaults ("USPV") is a California corporation that operates a safe-deposit-box facility in Beverly Hills. USPV's Beverly Hills facility houses over 800 safe deposit boxes.

Ruiz rented safe deposit box number 7622 ("Box 7622") from USPV, in which he placed approximately $57,000 in cash.

On March 22, 2021, the FBI raided USPV and seized the contents of all the safe deposit boxes there, including Box 7622. On April 8, 2021, Ruiz filed a claim with the FBI to retrieve his seized property. (Declaration of Joseph Ruiz ("Ruiz Decl."), ECF No. 26-6). The FBI's only response to Ruiz was an email stating that the agency would contact him in 30–60 days. The Government, however, has not returned Ruiz's property, but has instead indicated that it is seeking to forfeit the property.

Specifically, the Government has notified lawyers for USPV that it intends to forfeit the property of many USPV box-holders, including Ruiz's. Although some boxholders have received an individual notice from the Government of the Government's intent to forfeit property, Ruiz has not.

In the declaration filed in support of his Motion, Ruiz stated the following under penalty of perjury:

> I desperately need to have my money returned to me. I am currently unemployed, and I had been living off the funds in my USPV box prior to the seizure. The loss of access to my money means I do not have money that I need to pay for food and medical care.

> I am suffering from serious medical issues, as a result of a back injury that I suffered at a former job, and I also recently had a finger amputated after I suffered a bad fall. Without access to my money, I cannot pay for needed medical care including physical therapy for my back and finger.

> In addition, without access to my money I cannot pay for food. As a result, I am currently living off canned foods and other provisions that I stockpiled at the beginning of the pandemic.

(Ruiz Decl., ¶¶ 11–13).

On May 20, 2021, the FBI initiated an administrative forfeiture proceeding by issuing a "Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings" and an attached list of assets seized from USPV's premises that the Government seeks to forfeit, (together, "the FBI Notice").

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-04405-RGK-MAR | Date | July 23, 2021 |
|---|---|---|---|
| Title | *Paul Snitko et al v. United States of America et al* | | |

The FBI Notice states that the Government is seeking to forfeit the $57,000 in cash seized from Ruiz's safe deposit box.

On June 22, 2021, the Court granted in part Ruiz's Application for a Temporary Restraining Order ("TRO"). (TRO, ECF No. 52). The TRO enjoined the Government "from civilly forfeiting the property of . . . Joseph Ruiz without first sending [a] forfeiture notice[] that identif[ies] the specific factual and legal basis for the Government's determination to commence civil forfeiture proceedings." (*Id.* at 7). By separate order issued on July 16, 2021, (ECF no. 58), the Court converted the TRO into a preliminary injunction.

## III.  JUDICIAL STANDARD

The purpose of a preliminary injunction is generally to preserve the status quo pending a judgment on the merits. *Regents of Univ. of California v. Am. Broad. Companies, Inc.*, 747 F.2d 511, 514 (9th Cir. 1984). To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "When the government is a party, the last two factors (equities and public interest) merge." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021) (citation omitted). The court may also apply a sliding scale test, whereby the elements of the *Winter* test are balanced "so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

Where, as here, the moving party seeks a preliminary injunction that "orders a responsible party to take action[,]" *i.e.* a "mandatory injunction," the "court should deny such relief unless the facts and law clearly favor the moving party." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

## IV.  DISCUSSION

### A.  Ruiz' Motion for a Preliminary Injunction

Ruiz argues that he is entitled to a preliminary injunction based on his likelihood of success on the merits of both his Fifth Amendment Due Process claim, and Fourth Amendment claim for unlawful seizure of his property. Because the Court determines that the facts and the law clearly favor Ruiz as to his Fourth Amendment claim, the Court need not address Ruiz's argument as to the Fifth Amendment.

**CIVIL MINUTES - GENERAL**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-04405-RGK-MAR | Date | July 23, 2021 |
| --- | --- | --- | --- |
| Title | *Paul Snitko et al v. United States of America et al* | | |

The facts of this case raise two questions of constitutional import: first, "Why does the Government have Ruiz's $57,000?"; and second, "Why won't the Government give it back?"

As to the first question, Ruiz does not challenge the constitutionality of the Government's initial March 22, 2021 seizure of his property at this juncture. But some background on the first question helps frame the constitutional issues at play in the second.

The Government's answer to "Why does the Government have Ruiz's $57,000?" is as follows:

A grand jury indicted USPV for conspiring with its customers to launder money, distribute drugs, and structure financial transactions to avoid currency reporting requirements. The government obtained a criminal seizure warrant for "[t]he nests of safety deposit boxes and keys" at USPV which provides that it "does not authorize a criminal search or seizure of the contents of the safety boxes[,]" that "agents shall follow their written inventory policies to protect their agencies and the contents of the boxes" and that "agents shall inspect the contents of the boxes in an effort to identify their owners in order to notify them so that they can claim their property[.]" The inventory of the boxes' contents revealed firearms, illegal drugs, and anonymous stores of wealth, mostly cash.

(Defs.' Opp. to Pls.' Mot. for Preliminary Injunction at 2–3, ECF No. 51). Ruiz's Box 7622 was in one of the nests described in the warrant to search USPV's premises. Though the Court makes no ruling as to the constitutionality of the Government's March 22, 2021 search and seizure, the Government's story makes good practical sense. Assuming that the Government was authorized to seize the nests of safety deposit boxes at USPV, then, by necessity, the Government was authorized to seize Ruiz's nest egg which was locked up in Box 7622.

As to the second and more pressing question, the Government's answer falls flat. The Government asserts that after a boxholder submits a claim to the FBI for return of property, as Ruiz did, and "[a]fter verifying the identity of the boxholder, it can nonetheless be difficult and time consuming to return to that person the contents." (Defs.' Opp. to Pls.' Mot. for Preliminary Injunction at 5).

To return valuables, two special agents (per FBI policy for handling valuables) have to visit a secure valuables facility, in addition to at least one agent visiting the general storage facility, before meeting with the person to complete the return. [] The process also generates substantial paperwork. [] Scheduling the returns has also proven difficult. [] Many times agents have called to schedule a return, but have gotten no response. [] Other times, persons have scheduled returns, but then cancelled just before their appointment, shown up late, or simply failed to show up for their appointment at all.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-04405-RGK-MAR | Date | July 23, 2021 |
|---|---|---|---|
| Title | *Paul Snitko et al v. United States of America et al* | | |

(*Id.* at 5–6). The Government goes on at length as to the general difficulties in returning peoples' property to them, but the upshot of the Government's argument is that returning property to hundreds of people is a slow bureaucratic process.

As to the justification for continuing to seize the $57,000 found in Box 7622, the Government's answer falls flatter still. The Government asserts, without further explanation, that it is keeping Ruiz's $57,000 because "the cash is the subject of [] pending in rem administrative forfeiture proceedings." (*Id.* at 5).

But why? The FBI Notice sheds little light on the issue. The Notice states:

**Forfeiture Authority**: The forfeiture of this property has been initiated pursuant to 18 USC 981(a)(1)(C) [sic.] and the following additional federal laws: 19 U.S.C. §§ 1602-1619, 18 U.S.C. § 983 and 28 C.F.R Parts 8 and 9.

(Declaration of Robert E. Johnson ("Johnson Decl."). Ex. G at 5 of 20. ECF No. 44-8). This list of purported statutory bases for forfeiture is vague at best. Title 18 U.S.C. § 981(a)(1)(C) lists thirty-five sections of the United States Code. A violation of any one of these code provisions can provide a basis for forfeiture. 18 U.S.C. § 981(a)(1)(C). These include code sections outlawing influencing a loan officer, forgery, counterfeiting, uttering counterfeit obligations, smuggling, loan fraud, computer fraud, and bank fraud, among others.[1]

What the FBI Notice does not contain is any specific factual or legal justification for the Government's retention of the $57,000 that Ruiz asserts is his. Nor does the Government offer any justification for its continued retention of the $57,000 other than that "the cash is the subject of the pending in rem administrative forfeiture proceedings." It has been 123 days and counting since the Government seized Box 7622. Whether the Government's initial seizure of Box 7622 on March 22, 2021 violated Ruiz's constitutional rights is a question for another day. Whether the Government is justified in its continued seizure of the cash is the question at the heart of Ruiz's Motion.

The Court now addresses this question through the frame of the preliminary injunction factors enumerated in *Winter*. As discussed below, the Court finds that the facts and the law clearly favor Ruiz as to his Fourth Amendment claim.

---

[1]     In the TRO, (ECF No. 52), and subsequent preliminary injunction issued by separate order, (ECF No. 58), the Court found that this vague and generic notice raised significant Due Process issues.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-04405-RGK-MAR | Date | July 23, 2021 |
| Title | *Paul Snitko et al v. United States of America et al* | | |

1.   *Ruiz Has Demonstrated a Likelihood of Success on the Merits*

The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const., amend. IV. "The Fourth Amendment doesn't become irrelevant once an initial seizure has run its course." *Brewster v. Beck*, 859 F.3d 1194, 1197 (9th Cir. 2017). Rather, the Fourth Amendment is implicated by the Government's delay in returning seized property, irrespective of the Government's initial basis for seizing the property. *Id.* "A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification." *Id.*

Assuming that the Government's initial seizure of Box 7622 was justified by probable cause and conducted pursuant to a valid warrant, the Government has nonetheless failed to provide any justification for its continued seizure of the property. Why has the Government kept the $57,000 now that Ruiz has come forward and sworn under penalty of perjury that it is his? The Government doesn't really say. Instead, the Government states that it continues to seize Ruiz's property because "the cash is the subject of . . . pending in rem administrative forfeiture proceedings." This explanation is not a justification. Merely stating that the Government has initiated forfeiture proceedings against the property does not offer any insight into how the Government's continued retention of the $57,000 complies with the dictates of the Fourth Amendment.

2.   *Ruiz Has Demonstrated a Likelihood of Irreparable Harm*

"It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). The Government seized Box 7622 on March 22, 2021 and Ruiz filed a claim with the FBI to retrieve his seized property on April 8, 2021. To date, 106 days after Ruiz asked the FBI for his property back, the Government has neither returned the $57,000 nor provided an adequate justification for the prolonged seizure. Ruiz will therefore likely continue to suffer injury to his Fourth Amendment rights for the foreseeable future if an injunction does not issue.

Equally troubling is the fact that Ruiz "desperately need[s] to have [his] money returned" because he is "currently unemployed, and [] had been living off the funds in [his] USPV box prior to the seizure." Ruiz testifies that he needs the money because he "cannot pay for food" and is "currently

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-04405-RGK-MAR | | Date | July 23, 2021 |
|---|---|---|---|---|
| Title | *Paul Snitko et al v. United States of America et al* | | | |

living off canned foods and other provisions that [he] stockpiled at the beginning of the pandemic." He further testifies that without the $57,000, Ruiz "cannot pay for needed medical care including physical therapy for [his] back and finger."

Ruiz needs the money to pay for medical care and food. The Government does not challenge this testimony, or even address it. Ruiz has therefore established that without a preliminary injunction requiring the Government to return the property, he is likely to suffer irreparable harm via his inability to pay for food and needed medical treatment for an indeterminate period of time.

> 3. *Ruiz Has Established that the Balance of Equities Favors Injunctive Relief, and an Injunction Would Be in the Public Interest*

When, as here, the Government is a party to a suit, the last two factors of the *Winter* test "(equities and public interest) merge." *E. Bay Sanctuary Covenant*, 993 F.3d at 668.

The issuance of a preliminary injunction would be in the public interest because "it is always in the public interest to prevent the violation of a party's constitutional rights." *See Melendres*, 695 F.3d at 1002. Moreover, the Government raises no argument to the contrary.

Accordingly, Ruiz has satisfied all requirements for the issuance of a preliminary injunction. Moreover, because the Government offers no justification for its continued seizure of the contents of Ruiz's box, and because Ruiz has established a strong likelihood of irreparable harm to his Fourth Amendment rights and ability to obtain food and medical care, the Court finds that "the facts and law clearly favor [Ruiz]." *See Garcia*, 786 F.3d at 740.

### B.   Scope of the Preliminary Injunction

Plaintiffs urge the Court to "issue a preliminary injunction directing the government to provide notice to all individuals who have come forward in their own names to file claims for the contents of their USPV boxes for the basis for the ongoing seizure of their property[,] and . . . direct the government to release the property to the extent that it is unable to satisfy the requirement to articulate such a basis." (Motion at 22–23). The Court declines to issue a preliminary injunction pertaining to the rights of USPV boxholders that did not move for a preliminary injunction. *See California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018) (holding that the scope of an injunctive "remedy must be no broader and no narrower than necessary to redress the injury shown by the [moving party].").

In the alternative, Plaintiffs request that the Court provisionally certify a class of:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:21-cv-04405-RGK-MAR | Date | July 23, 2021 |
|----------|------------------------|------|----------------|
| Title | *Paul Snitko et al v. United States of America et al* | | |

All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; (b) have identified themselves to the FBI since the seizure; (c) have not been notified that their safe deposit boxes are the subject of a currently ongoing administrative or judicial forfeiture proceeding; and (d) whose property is still in the possession of the federal government.

(Motion at 17–18). The Court declines to do so because Plaintiffs have failed to satisfy the requirements of Rule 23, including Rule 23(a)(1)'s numerosity requirement. *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members."). Here, Plaintiffs make no showing as to the numerosity of the putative class.

Accordingly, the preliminary injunction described below applies to Ruiz alone:

- Within seven days of this Order, the Government shall return the contents of Box 7622 to Ruiz (provided that Ruiz is able to produce the key to Box 7622), or;
- In the alternative, within seven days of this Order, the Government must (1) send a notice letter to Ruiz and his counsel of record informing them of the Government's asserted legal basis for the ongoing seizure of the contents of Box 7622, and (2) show cause to the Court in writing as to why the Government continues to seize the contents of Box 7622.
- If the Government fails to return the property in seven days and is unable to articulate an adequate justification for the ongoing seizure of the contents of Box 7622, separate from the justification for the initial seizure warrant, the Court will amend this Order to require the Government to return the contents of Box 7622 to Ruiz without delay, provided that Ruiz is able to produce the key to Box 7622.
- Plaintiffs shall serve a copy of this Order on all Defendants within one day of its issuance.

**V.     CONCLUSION**

In accordance with the foregoing, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' Motion for a preliminary injunction.

**IT IS SO ORDERED.**

Initials of Preparer                                      :

Case 2:21-cv-04405-RGK-MAR   Document 58   Filed 07/16/21   Page 1 of 5   Page ID #:729

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:21-cv-04405-RGK-MAR | Date | July 16, 2021 |
| Title | *Paul Snitko et al v. United States of America et al* | | |

Present: The Honorable   R. GARY KLAUSNER, UNITED STATES DISTRICT JUDGE

| Sharon L. Williams | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiff: | | Attorneys Present for Defendant: |
| Not Present | | Not Present |

Proceedings:        (IN CHAMBERS) Order Re: Request for Preliminary Injunction

## I.   INTRODUCTION

On June 9, 2021, Paul Snitko, Jennifer Snitko, Joseph Ruiz, Tyler Gothier, Jeni Verdon-Pearsons, Michael Storc, and Travis May filed a first amended complaint. ("FAC") (ECF No. 33), against the United States of America, acting United States Attorney Tracy L. Wilkison, and assistant Director of the FBI Kristi Koons Johnson (collectively, "Defendants" or "the Government"). Plaintiffs allege claims for Return of Property pursuant to Federal Rule of Criminal Procedure Rule 41(g) and for violation of Plaintiffs' rights under the Fourth and Fifth Amendments of the Constitution.

Plaintiffs' claims arise from the Government's seizure and search of Plaintiffs' personal property located in safe deposit boxes on the premises of non-party US Private Vaults. Plaintiffs seek to represent a class of "[a]ll renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; and (b) have identified themselves to the FBI since the seizure." (FAC ¶ 14).

On June 22, 2021, the Court issued a temporary restraining order ("TRO") which, among other things, enjoined the Government from forfeiting the property of Plaintiffs Joseph Ruiz, Jeni Verdon-Pearsons, Michael Storc, and Travis May. (*See* TRO, ECF No. 52). The Court also ordered the Government to show cause in writing as to why a preliminary injunction should not issue on the same terms described in the TRO. Having read and considered the Government's Response, (Response, ECF No. 55), and Plaintiffs' Reply thereto, (Reply, ECF No. 56), the Court determines that Plaintiffs Joseph Ruiz and Travis May are entitled to entry of a preliminary injunction, but Jeni Verdon-Pearsons and Michael Storc are not. Accordingly, for the reasons discussed below, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' request for a preliminary injunction.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-04405-RGK-MAR | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Paul Snitko et al v. United States of America et al* | | |

## II.   FACTUAL BACKGROUND

Unless otherwise indicated, the following facts are drawn from Plaintiffs' FAC.

United States Private Vaults ("USPV") is a California corporation that operates a safe-deposit-box facility in Beverly Hills. USPV's Beverly Hills facility houses over 800 safe deposit boxes.

Jeni Verdon-Pearsons ("Verdon-Pearsons") and Michael Storc ("Storc") are a married couple who rented a safe deposit box from USPV in which they placed silver and about $2,000 in cash, as well as various personal documents.

Joseph Ruiz ("Ruiz") rented a safe deposit box from USPV in which he placed approximately $57,000 in cash—money that Ruiz relies on to pay his living and medical expenses.

Travis May ("May") rented a safe deposit box at USPV in which he placed gold and approximately $63,000 in cash.

On March 22, 2021, the FBI raided USPV and seized the contents of hundreds of safe deposit boxes, including those rented by Plaintiffs. After the FBI seizure on March 22, Plaintiffs all filed claims with the FBI to retrieve their seized property. The Government, however, has not returned Plaintiffs' property, but has instead indicated that it is seeking to forfeit their property.

Specifically, the Government has notified lawyers for USPV that it intends to forfeit the property of many USPV box-holders, including Plaintiffs'. Additionally, the Government sent individualized notices of its intent to forfeit property to some box-holders, including Verdon-Pearsons, Storc, and May. Plaintiffs do not allege that Ruiz has received a similar individualized notice.

On May 20, 2021, the FBI initiated an administrative forfeiture proceeding by issuing a "Notice of Seizure of Property and Initiation of Administrative Forfeiture Proceedings" and an attached list of assets seized from USPV's premises that the Government seeks to forfeit, (together, "the FBI Notice"). The FBI Notice states that the Government is seeking to forfeit the $57,000 in cash seized from Ruiz's safe deposit box, the gold and over $63,000 in cash seized from May's safe deposit box, and the silver seized from Verdon-Pearsons and Storc's safe deposit box.

On June 22, 2021, the Court found that the notices sent to Verdon-Pearsons, Storc, and May were deficient, and issued a TRO which provided that:

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-04405-RGK-MAR | | Date | July 16, 2021 |
|---|---|---|---|---|
| Title | *Paul Snitko et al v. United States of America et al* | | | |

- Defendants are enjoined from civilly forfeiting property based on the inadequate forfeiture notices sent to Jeni Verdon-Pearsons on May 21, 2021, to Michael Storc on May 21, 2021, and to Travis May on May 20, 2021;

- Defendants are further enjoined from civilly forfeiting the property of Jeni Verdon-Pearsons, Michael Storc, Travis May, and Joseph Ruiz without first sending forfeiture notices that identify the specific factual and legal basis for the Government's determination to commence civil forfeiture proceedings.

(TRO at 7).

## III.   JUDICIAL STANDARD

The purpose of a preliminary injunction is generally to preserve the status quo pending a judgment on the merits. *Regents of Univ. of California v. Am. Broad. Companies, Inc.*, 747 F.2d 511, 514 (9th Cir. 1984). To obtain a preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "When the government is a party, the last two factors (equities and public interest) merge." *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 668 (9th Cir. 2021) (citation omitted). The court may also apply a sliding scale test, whereby the elements of the *Winter* test are balanced "so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). The moving party has the burden of persuasion. *Hill v. McDonough*, 547 U.S. 573, 584 (2006).

## IV.   DISCUSSION

### A.   Plaintiffs' Request for a Preliminary Injunction

Having read and considered the Government's Response to the TRO. (ECF No. 55), the Court determines that the Government has failed to show cause as to why Plaintiffs May and Ruiz are not entitled to entry of a preliminary injunction on the same terms as the TRO.

However, the Court is convinced that Verdon-Pearsons and Storc are not entitled to entry of a preliminary injunction at this time. It is undisputed that on June 9, 2021, Verdon-Pearsons and Storc submitted a claim to the FBI which stopped the administrative forfeiture proceeding as to their property. (Response at 5); (Reply at 4). The function of a preliminary injunction is to preserve the status quo

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-04405-RGK-MAR | Date | July 16, 2021 |
|---|---|---|---|
| Title | ***Paul Snitko et al v. United States of America et al*** | | |

pending a judgment on the merits. *Am. Broad. Companies, Inc.*, 747 F.2d at 514. Here, by submitting a claim to the FBI, Verdon-Pearsons and Storc halted the administrative forfeiture proceeding as to their property and triggered the Government's 90-day clock to either (1) file a judicial forfeiture proceeding, or (2) return the property to Verdon-Pearsons and Storc. *See* 18 U.S.C. § 983(a)(3)(A) & (B). Accordingly, the status quo with respect to Verdon-Pearsons and Storc's property will now be maintained until the Government returns the property or files a judicial forfeiture action and prosecutes that action to completion. Because Verdon-Pearsons and Storc make no showing that their property faces any immediate threat of forfeiture, the Court declines to preliminarily enjoin the Government from forfeiting Verdon-Pearsons and Storc's property at this juncture.

**B.    Scope of the Preliminary Injunction**

Plaintiffs urge the Court to preliminarily enjoin the Government "from civilly forfeiting property seized from safe deposit boxes at U.S. Private Vaults without first sending forfeiture notices that identify the specific factual and legal basis for the government's determination to commence civil forfeiture proceedings." (Pls.' Proposed Order to Show Cause and Temporary Restraining Order at 3–4, ECF No. 14–4). The Court declines to issue a preliminary injunction pertaining to the rights of USPV boxholders that did not move for a preliminary injunction. *See California v. Azar*, 911 F.3d 558, 584 (9th Cir. 2018) (holding that the scope of an injunctive "remedy must be no broader and no narrower than necessary to redress the injury shown by the [moving party].").

In the alternative, Plaintiffs request that the Court provisionally certify a class of:

> All renters of U.S. Private Vaults safe deposit boxes who (a) had property within their safe-deposit box seized by the federal government on or around March 22, 2021; (b) have identified themselves to the FBI since the seizure; (c) whose property is now the subject of a purported administrative forfeiture proceeding; and (d) whose property is still in the possession of the federal government.

(TRO Application at 19–20). The Court declines to do so because Plaintiffs have failed to satisfy the requirements of Rule 23, including Rule 23(a)(1)'s numerosity requirement. *See Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010) ("In general, courts find the numerosity requirement satisfied when a class includes at least 40 members."). Here, Plaintiffs make no showing as to the numerosity of the putative class.

May and Ruiz, however, have demonstrated that they are entitled to a preliminary injunction on the same terms and for the same reasons stated in the TRO issued on June 22, 2021, (ECF No. 55). The Court therefore **GRANTS** a preliminary injunction in favor of May and Ruiz as follows:

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | 2:21-cv-04405-RGK-MAR | Date | July 16, 2021 |
|---|---|---|---|
| Title | *Paul Snitko et al v. United States of America et al* | | |

- Defendants are enjoined from civilly forfeiting property based on the inadequate forfeiture notice sent to Travis May on May 20, 2021;

- Defendants are further enjoined from civilly forfeiting the property of Travis May and Joseph Ruiz without first sending forfeiture notices that identify the specific factual and legal basis for the Government's determination to commence civil forfeiture proceedings;

- As the Court is satisfied that no party will wrongfully suffer costs or damages due to the terms this preliminary injunction, it does not require Plaintiffs to post a bond in security pursuant to Rule 65(c) of the Federal Rules of Civil Procedure.

- Plaintiffs shall serve a copy of this Order on all Defendants within one day of its issuance.

## V.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS in part** and **DENIES in part** Plaintiffs' request for a preliminary injunction.

**IT IS SO ORDERED.**

_____ : _____

Initials of Preparer    _____