**G.  USPV Has, In Fact, Been Used By Criminals to Store Criminal Proceeds**

20.  As set forth above, USPV is designed to appeal to and cater to criminals, and has been successful in doing so.  Numerous federal, state and local investigations have led law enforcement to USPV repeatedly.  The contents of specific USPV boxes have been forfeited to the government because they are the proceeds of criminal activity.  The cases below exemplify this.  According to court documents and law enforcement reports:

   a.  OWEN HANSON -- On September 9, 2015 federal agents executed a federal search warrant for three separate safe deposit boxes located at USPV. The boxes belonged to OWEN HANSON who was the leader and organizer of ODOG ENTERPRISE, an association existing for the purpose of importing and exporting controlled substances; conducting an illegal gambling business; bookmaking; promoting racketeering activities; and money laundering.  As part of the enterprise, HANSON's organization distributed methamphetamine, heroin, cocaine and ecstasy.  HANSON was indicted and pleaded guilty to Racketeering Conspiracy and Conspiracy to Distribute Illegal Narcotics.  As a result of the search warrants at USPV, agents seized a $5,000 bond; approximately 400 one-ounce silver coins; and twenty-six ten-ounce silver bars.  The contents of HANSON's USPV boxes were forfeited as criminal proceeds[10].

   b.  CYRUS IRANI -- On October 28, 2015, federal agents executed a federal search warrant on Box 2105 at USPV.  The box belonged to CYRUS IRANI who was the master bookmaker and head of an

---

[10] UNITED STATES OF AMERICA v. OWEN HANSON, Case No. 15cr2310-WQH, U.S. District Court, Southern District of California

15

**EXHIBIT A**

illegal gambling organization. IRANI's organization operated both internet and traditional bookmaking operations, and engaged in money laundering. IRANI had well over 1500 gambling accounts under his ultimate supervision. IRANI pleaded guilty to Enterprise Corruption; fourteen others in the IRANI organization were also convicted of various gambling, money laundering and enterprise corruption charges. As a result of the search warrant at USPV, agents seized $500,000 in U.S. currency; a box containing 15 gold coins and 22 gold bars; and documents. The contents of IRANI's USPV box were forfeited as criminal proceeds.

  c.   NATHAN HOLTZ -- On November 3, 2015 a state search warrant was executed at USPV on a box rented by NATHAN HOLTZ. HOLTZ had been arrested earlier that day for a violation of <u>California Health & Safety code §11370.9</u> (possession of narcotics proceeds), after leaving USPV. HOLTZ had $55,200 in his vehicle, as well as keys to his USPV box. A search of HOLTZ's USPV box resulted in the seizure of an additional $200,100. HOLTZ was on active probation for a prior marijuana sales conviction and admitted that the cash was proceeds of interstate transportation and sale of marijuana[11]. The cash was forfeited as criminal proceeds.

  d.   GERALD LEBOWITZ -- On November 12, 2015 GERALD LEBOWITZ consented to a search of his box at USPV, stating at the time that cash in the vault was brought into the country illegally to avoid taxes. Agents from the DEA seized $1,543,400 from LEBOWITZ's box, which he disclaimed. Further investigation into LEBOWITZ revealed that he was part of a conspiracy to manufacture and

---

[11] Note that these events pre-date the legalization of marijuana in California, and involve illegal interstate sales in any case.

16

distribute methaqualone, a controlled substance. During the course of the investigation, agents seized over 45 kilograms of methaqualone powder and 12 canisters of the chemical o-Taluidine, both chemical precursors. In addition, agents seized over $4 million, beyond that disclaimed at USPV. In 2017 LEBOWITZ pleaded guilty to possession with intent to distribute methaqualone and money laundering. All assets were forfeited as criminal proceeds[12].

        e. Prostitution Ring -- In 2014, FBI Newark initiated an investigation into a network of individuals engaged in facilitation of prostitution, including child prostitution; Mann Act violations; money laundering and possession of child pornography. FBI Newark identified the leader of the organization (Newark Target Subject, hereafter "Newark TS") who operated a high-end escort service and provided prostitutes to clients nationally. Based on information from multiple confidential sources, investigators learned that Newark TS has had as many as five different boxes at USPV. Additionally, investigators learned that Newark TS accessed his USPV boxes approximately 50 times between July 2012 and December 2016. On one occasion, an FBI Confidential Source[13] ("CS-2") went to USPV with

---

[12] UNITED STATES OF AMERICA v. GERALD LEBOWITZ, Case No. 2:17-cr-00053-CAS, U.S. District Court, Central District of California

[13] CS-2 provided information to FBI Newark. The information CS-2 provided to the FBI about Newark TS's prostitution business has proved to be accurate and reliable based on corroboration from several independent sources. For instance, CS-2's description of Newark TS's efforts to recruit CS-2 for prostitution from the adult film industry has been corroborated by open sources of information, including social media websites, identifying CS-2 as a performer in the adult film industry. Moreover, CS-2 contacted law enforcement of his/her own volition and provided information concerning Newark TS's criminal activities and his/her criminal activities without any promise of immunity from prosecution, remuneration, or other benefits. Federal agents have been able to corroborate the vast majority of information provided by CS-2 through public records, U.S. passport and foreign travel records, and business

Newark TS and personally saw what he/she estimated to be $250,000 US currency in Newark TS's USPV box. On a separate occasion, CS-2 went to USPV with Newark TS and saw what he/she estimated to be $500,000 in US currency. Further, CS-2 observed computer discs, digital devices and back-up computer hard drives in Newark TS's USPV box. CS-2 was aware that Newark TS used these digital devices to store photos, videos and other data associated with prostitution, pornography, and child pornography. CS-2 was also aware that Newark TS stored client lists, pornographic photos and pornographic videos of clients, for possible use as leverage and/or blackmail. Based on business records obtained in January 2020, Newark TS continues to rent a box at USPV. FBI Newark's investigation into this subject is on-going.

   f. MIKHAIL MALYKHIN -- On September 1, 2016 federal agents executed a federal search warrant on box 5005 at USPV. The box belonged to MIKHAIL MALYKHIN who was the leader of an identity theft/computer intrusion fraud ring. MIKHAIL and others were involved in a complex scheme which involved altering hacked "Flexible Spending Account" debit cards from a health insurance provider and altering the codes to cash out the debit cards. MIKHAIL was also involved in credit card fraud, ATM fraud, tax fraud, computer intrusion and other similar crimes. MIKHAIL was indicted for conspiracy to commit access device fraud and pleaded guilty. As a result of the September 1, 2016 search warrant at USPV, agents seized $266,150 United States Currency; four one-ounce gold bars; various

---

incorporation records, Internet searches of social media pages and websites, and information provided by other witnesses. Accordingly, Your Affiant submits that CS-2's information is credible and reliable under the totality of the circumstances.

gift cards which had been loaded with over $20,000 in value; two Russian passports; a car Certificate of Title for a 1966 Ford Mustang; two digital devices (flash drives) containing evidence of the offenses; and four more gold keys, identical to those used at USPV.  Additional warrants were obtained for the additional USPV boxes.  Those warrants resulted in the seizure of $592,450 US Currency from one box and $435,190 from another.  The contents of all of MIKHAIL's USPV boxes were forfeited as criminal proceeds and used to pay restitution to victims[14].

       g.   VINCENT RAMOS -- On March 6, 2018 federal agents executed a federal Seizure Warrant for the contents of Box 314 at USPV.  The box belonged to VINCENT RAMOS who was the CEO of Phantom Secure, a criminal enterprise which facilitated the importation, exportation and distribution, internationally, of wholesale quantities of cocaine, heroin and methamphetamine.  Phantom Secure provided encrypted communications devices to drug trafficking organizations to further international drug trafficking, while obstructing and impeding law enforcement.  RAMOS was indicted for and pleaded guilty to Racketeering and Drug Trafficking.  As a result of the search warrants at USPV, agents seized $101,080 in US Currency and 26 one-ounce gold coins.  The contents of RAMOS's USPV box were forfeited as criminal proceeds[15].

       h.   ALLAN NEYMAN et al. -- On April 24, 2019, Victim S.S. was kidnapped in San Diego, California and taken against his will to a warehouse in Los Angeles.  While being held in the warehouse, S.S.

---

[14] UNITED STATES v. MIKHAIL KONSTANTIVOV MALYKHIN, No. 16-0688-DMG, United States District Court, Central District of California

[15] UNITED STATES v. VINCENT RAMOS, Case No. 18CR1404-WQH, United States District Court, Southern District of California

was brutally tortured.  He was hit with sticks and baseball bats; stripped naked; tasered on his penis and testicles; hit with a hammer on his toes; doused in a flammable liquid; set on fire; and anally penetrated with a foreign object.  S.S. had been employed by a group of people who were engaged in the distribution of counterfeit marijuana vaping cartridges.  This group believed that S.S. stole a suitcase full of cash, which a vape cartridge customer left at the warehouse.  S.S. had a portion of the money with him in San Diego; the rest was left with his ex-wife, who placed the cash in a safe deposit box at USPV.  At the direction of the kidnappers, she retrieved the cash from USPV and delivered it as ransom.  S.S. eventually escaped from the warehouse.  Detectives identified ALLAN NEYMAN and four others who participated in the kidnapping and torture.  They were arrested and charged with violations of California Penal Code 209(a) – Kidnap for Ransom; P.C 664/187(a) – Attempt Murder; P.C. 206 – Torture; and P.C. 205 – Aggravated Mayhem. Investigators believe that the money stored at USPV was the proceeds of criminal activity; stolen; the cause of brutal violence; and used as ransom.  During the course of this investigation, agents also learned that NEYMAN is an associate of USPV owner Michael POLIAK.  In conversations with CS-1, POLIAK described in detail, the April 2019 kidnapping/torture and attributed the crime to his business associate, NEYMAN.  POLIAK told CS-1 that he purchased vape cartridges and packaging (but not THC oil) from NEYMAN ("my guy who owned the warehouse") for his marijuana vape business.  Furthermore, POLIAK said to CS-1, "you want to hear the funny thing?  The money was in my vault! His wife put money into my vault," explicitly acknowledging USPV's role in the crime.  Additionally, on or about

January 27, 2020, CS-1 met NEYMAN with POLIAK and discussed various internet-based fraud schemes which might generate income. POLIAK and CS-1 had previously discussed taking over NEYMAN's business interests due to NEYMAN's pending incarceration.

  i. MATTHEW BEAVER -- On July 1, 2019, agents of the DEA and LAPD seized $215,653 in US currency from MATTHEW BEAVER, who was observed entering and leaving USPV. BEAVER was arrested for violations of California Health & Safety Code Section §11370.6, transportation of narcotics proceeds greater than $100,000. Pursuant to his arrest, agents seized the cash, as well as eight cell phones and keys which were similar to the keys which open boxes at USPV. On July 8, 2019 a state search warrant was served on USPV boxes #6515 and #7111. Agents seized $1,448,700 from those boxes. Subsequent search warrants executed on BEAVER's phones revealed evidence of his involvement in marijuana trafficking. BEAVER has a criminal history and is not licensed to distribute or grow marijuana in California or any other state. Per the California Employment Development Department (EDD), BEAVER has no employment which would generate the income represented by this cash seizure. BEAVER admitted his participation in an illegal marijuana business. BEAVER admitted that the cash was the proceeds of unlawful criminal activity. The cash was therefore forfeited.

  j. Between February 1, 2020 and February 26, 2021, agents conducted surveillance at USPV. Agents identified many current USPV customers who, based on my training and experience, are likely engaged in criminal activity and storing criminal proceeds or evidence of crimes at USPV. For example, on February 12, 2020, agents observed a couple enter USPV who were subsequently identified

21

and linked to an FBI San Diego healthcare fraud investigation. Similarly, agents observed subject H.T. at USPV on three separate occasions; H.T. is the subject of a current healthcare fraud investigation by FBI Los Angeles.  A third healthcare fraud suspect appeared at USPV on May 28, 2020.  On June 9, 2020, agents identified a USPV customer who was subsequently linked to a current, on-going investigation into dark-web drug trafficking.  Agents also identified a USPV customer who is closely associated with a group being investigated for the theft of thousands of cell phones. Another individual identified has been associated to an FBI Los Angeles (Russian) counterintelligence investigation.  Another customer identified in February 2021 was referred to FBI Los Angeles for a possible Ponzi scheme.  Furthermore, on multiple occasions agents observed USPV patrons in vehicles with out of state license plates, specifically Illinois, Ohio and Nevada.  Based on my training and experience in money laundering investigations, Chicago, Illinois is a hub of both drug trafficking and money laundering.  I believe these patrons were using their USPV box to store drug proceeds.  Agents also observed a number of USPV patrons in rental cars.  Based on my training and experience, drug traffickers often rent vehicles to transport drugs and cash, in an effort to remain anonymous, and hide their identities from law enforcement.